**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

**GIRARD SHARP LLP**
DANIEL C. GIRARD
ADAM E. POLK
TOM WATTS
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
apolk@girardsharp.com
tomw@girardsharp.com

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
MELANIE R. MONROE (SBN 275423)
TREVOR M. FLYNN (SBN 253362)
PETER GRAZUL (SBN 342735)
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Tel: 619/215-1741
jfitzgerald@fmfpc.com
mmonroe@fmfpc.com
tflynn@fmfpc.com
pgrazul@fmfpc.com

**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
JASON KELLOGG *(pro hac vice)*
MARCELO DIAZ-CORTES *(pro hac vice)*
100 Southeast Second Street, 36th Floor
Miami, FL 33134
Tel: 305/803-8788
jk@lkslg.com
md@lklsg.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| IN RE:<br><br>SILVERGATE CAPITAL CORPORATION | Case No: 23-cv-01406-RBM-BLM<br><br>**MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br>Judge: Hon. Ruth Bermudez Montenegro<br>Hearing Date: March 31, 2025<br>Courtroom: 5B<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................iii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL......................1

MEMORANDUM.................................................................................................2

I.      INTRODUCTION ...................................................................................2

II.     FACTUAL AND PROCEDURAL BACKGROUND .....................................4

    A.      The Complaint and Defendants' Motion to Dismiss ...............................4

    B.      Discovery Efforts .............................................................................5

    C.      Settlement Negotiations ....................................................................6

    D.      Bankruptcy Proceedings....................................................................7

III.    TERMS OF THE SETTLEMENT ..............................................................7

IV.     LEGAL STANDARD...............................................................................8

V.      ARGUMENT..........................................................................................8

    A.      The Court Will Likely Be Able Certify the Class.....................................8

        1.      The Requirements of Rule 23(a) are Satisfied..............................9

            a.      Numerosity ...............................................................9

            b.      Commonality ...........................................................9

            c.      Typicality................................................................10

            d.      Adequacy ...............................................................11

        2.      The Requirements of Rule 23(b)(3) are Satisfied........................12

            a.      Predominance ..........................................................12

            b.      Superiority ..............................................................13

    B.      The Court Should Grant Preliminary Approval of the Proposed Settlement...................................................................................14

i

1.    The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel ................................................................................ 15

2.    The Settlement Treats All Class Members Equitably ................. 18

3.    The Relief Provided to the Class is Adequate. ............................ 18

    a.    The Strengths of Plaintiffs' Case and Risk, Expense, Complexity, and Duration of Further Litigation .......................................................................... 19

    b.    The Risk of Maintaining Class Status Through Trial ................................................................................ 20

    c.    The Amount Offered in Settlement ................................ 21

    d.    The Terms of Any Proposed Award of Attorney's Fees. ............................................................................... 21

    e.    No Separate Agreements Weigh Against Preliminary Approval ............................................... 22

C.    The Court Should Defer the Allocation Plan, Notice, and Final Approval ................................................................................................ 22

VI.    CONCLUSION ......................................................................................... 25

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR PRELIMINARY APPROVAL

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Similasan Corp.*,
  2017 WL 1346404 (S.D. Cal. Apr. 12, 2017) ...................................................................17

*Altamirano v. Shaw Indus., Inc.*,
  2015 WL 4512372 (N.D. Cal. July 24, 2015) ...............................................................18

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................................12, 14

*Atlas v. Accredited Home Lenders Holding Co.*,
  2009 WL 3698393 (S.D. Cal. Nov. 2, 2009) ...............................................................16

*Barnes v. D.C.*,
  924 F. Supp. 2d 103 (D.D.C. 2013) ...........................................................................23

*Beale v. EdgeMark Fin. Corp.*,
  1995 WL 631840 (N.D. Ill. Oct. 23, 1995) ...............................................................23

*Bhatia v. Silvergate Bank*,
  725 F. Supp. 3d 1079 (S.D. Cal. 2024) ........................................................................4

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ...........................................................................17

*Browne v. Am. Honda Motor Co.*,
  2010 WL 9499072 (C.D. Cal. July 29, 2010) ...............................................................20

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ...................................................................................16

*Castro v. ABM Indus., Inc.*,
  325 F.R.D. 332 (N.D. Cal. 2018) ...............................................................................11

*Castro v. Paragon Indus., Inc.*,
  2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ...............................................................12

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...................................................................................20

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ...................................................................................................13

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ...................................................................................11

*Hale v. Manna Pro Prod., LLC*,
  2020 WL 3642490 (E.D. Cal. July 6, 2020) ...............................................................16

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) .................................................................10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).................................................................................passim

*Harris v. Vector Mktg. Corp.*,
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .............................................................18

*In re Ariz. Theranos, Inc. Litig.*,
  2020 WL 5435299 (D. Ariz. Mar. 6, 2020) .................................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)........................................................................................17

*In re BofI Holding, Inc. Sec. Litig.*,
  2022 WL 9497235 (S.D. Cal. Oct. 13, 2022) ...............................................................22

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  424 F. Supp. 3d 456 (E.D. La. 2020) .....................................................................16, 22

*In re FTX Cryptocurrency Exch. Collapse Litig.*,
  677 F. Supp. 3d 1379 (J.P.M.L. 2023)........................................................................24

*In re Hyundai & Kai Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019).............................................................................8, 12, 14

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)........................................................................................22

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir.1995)...........................................................................................17

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .......................................................passim

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  527 F. Supp. 3d 269 (E.D.N.Y. 2021) .........................................................................23

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2016 WL 6091259 (N.D. Cal. Oct. 18, 2016)..............................................................17

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..............................................................16

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 3648478 (N.D. Cal. 2016)............................................................................21

*Jabbari v. Farmer*,
   965 F.3d 1001 (9th Cir. 2020)..................................................................................12

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998)..................................................................................10

*Kim v. Space Pencil, Inc.*,
   2012 WL 5948951 (N.D. Cal. Nov. 28, 2012)......................................................20

*Kutzman v. Derrel's Mini Storage, Inc.*,
   2020 WL 406768 (E.D. Cal. Jan. 24, 2020)..........................................................12

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)................................................................................15

*Makaeff v. Trump Univ., LLC*,
   309 F.R.D. 631 (S.D. Cal. 2015)............................................................................21

*Mandalevy v. Bofi Holding Inc.*,
   2022 WL 4474263 (S.D. Cal. Sept. 26, 2022)....................................................9, 11

*Manner v. Gucci Am., Inc.*,
   2016 WL 1045961 (S.D. Cal. Mar. 16, 2016)...................................................15, 16

*Martinez v. Univ. of San Diego*,
   2024 WL 4713891 (S.D. Cal. Nov. 7, 2024).....................................................8, 14, 15, 18

*McKinney v. U.S. Postal Serv.*,
   292 F.R.D. 62 (D.D.C. 2013)..................................................................................23

*Mendoza v. Hyundai Motor Co.*, Ltd,
   2017 WL 342059 (N.D. Cal. 2017).........................................................................21

*Mergens v. Sloan Valve Co.*,
   2017 WL 9486153 (C.D. Cal. Sept. 18, 2017)........................................................11

*Mezzadri v. Med. Depot, Inc.*,
   2016 WL 5107163 (S.D. Cal. May 12, 2016)............................................................9

*Moreno v. Beacon Roofing Supply, Inc.*,
   2020 WL 1139672 (S.D. Cal. Mar. 9, 2020)...........................................................13

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
   2016 WL 2610107 (S.D. Cal. May 6, 2016), *aff'd*, 926 F.3d 528 (9th Cir. 2019)............21

*Newton v. Am. Debt Servs., Inc.*,
   2015 WL 3614197 (N.D. Cal. June 9, 2015)...........................................................10

*Rannis v. Recchia*,
   380 Fed. App'x 646 (9th Cir. 2010)..........................................................................9

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
   2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ................................................ 20

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ........................................................................ 10

*Rodriguez v. W. Pub'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................ 17, 20

*Rosales v. El Rancho Farms*,
   2015 WL 4460635 (E.D. Cal. July 21, 2015) ................................................ 17

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) .......................................................................... 9

*Schaffer v. Litton Loan Servicing, LP*,
   2012 WL 10274679 (C.D. Cal. 2012) ............................................................ 21

*Scheuneman v. Arena Pharms., Inc.*,
   2020 WL 3129566 (S.D. Cal. June 12, 2020) ................................................ 13

*Seb Inv. Mgmt. AB v. Symantec Corp.*,
   2022 WL 409702 (N.D. Cal. Feb. 10, 2022) .................................................. 22

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) .................................................................... 21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .......................................................................... 11

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .................................................................... 13

*Thomas v. MagnaChip Semiconductor Corp.*,
   2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................................................ 22

*Tschudy v. J.C. Penney Corp., Inc.*,
   2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) .................................................. 21

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ........................................................................................ 12

*Voulgaris v. Array Biophrama*,
   2021 WL 6331178 (D. Colo. Dec. 3, 2021) .................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................... 8, 10

*White v. Milk & Honey at Wesley Chapel, LLC*,
   2022 WL 1714858 (N.D. Ga. Jan. 4, 2022) .................................................... 23

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR PRELIMINARY APPROVAL

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .................................................................. 10

*Yeoman v. Ikea U.S.A. W., Inc.*,
2014 WL 7176401 (S.D. Cal. Dec. 4, 2014), *vacated and remanded sub nom.* on other grounds in *Medellin v. Ikea U.S.A. W., Inc.*, 672 Fed. App'x 782 (9th Cir. 2017) ............. 21

**Statutes**

11 U.S.C. § 101-1532 ............................................................................... 7

11 U.S.C. § 362(a)(1) ............................................................................ 2, 7

28 U.S.C. § 1292(b) .................................................................................. 5

Cal. Bus. and Prof. Code § 17200 ............................................................ 4

**Other Authorities**

2 NEWBERG ON CLASS ACTIONS § 11.28 .................................................. 11

2 NEWBERG ON CLASS ACTIONS § 11.59 .................................................. 11

3 Newberg and Rubenstein on Class Actions § 8:16 (6th ed.) ................. 23

Wright & Miller, Fed. Prac. & Proc. Civ. § 1788 (3d ed.) ...................... 23

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ........................................................................... 10

Fed. R. Civ. P. 23(a)(4) ........................................................................... 11

Fed. R. Civ. P. 23(b)(3) ........................................................................... 13

Fed. R. Civ. P. 23(e) ................................................................................ 8

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................... 22

Fed. R. Civ. P. 23(e)(2) ................................................................... 8, 15, 18

Fed. R. Civ. P. 23(e)(3) ........................................................................... 22

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR PRELIMINARY APPROVAL

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**PLEASE TAKE NOTICE THAT** Plaintiffs,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order:

(1)    preliminarily approving the proposed Settlement Agreement;[2]

(2)    deferring a ruling on a Notice Plan and Plan of Allocation pending a further submission by Plaintiffs within 120 days of the Court's entry of the Preliminary Approval Order

A copy of the proposed Order Granting Motion for Preliminary Settlement Approval is separately submitted with this Motion.

Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Joint Declaration of Proposed Class Counsel in Support of Preliminary Settlement Approval, the pleadings and papers on file in *Bhatia v. Silvergate Bank*, No. 23-cv-01406-RBM-BLM (the "Litigation"), and any other matter this Court may take notice of.

---

[1] Plaintiffs for the purposes of the proposed settlement are Joewy Gonzalez, Nicole Keane, and Golam Sakline.

[2] The Settlement Agreement is attached to this Motion as Exhibit A.

1

2
## MEMORANDUM

3
## I.    INTRODUCTION

4
This action arises out of the highly publicized November 2022 collapse of the FTX

5
cryptocurrency exchange. FTX filed for bankruptcy shortly after the multi-billion-dollar

6
fraud perpetrated by its principal, Sam Bankman-Fried ("SBF"), came to light. Plaintiffs

7
Nicole Keane, Joewy Gonzalez, and Golam Sakline were FTX customers and victims of

8
SBF's fraud. Each wired money intended for trading in cryptocurrencies on the FTX platform

9
to Silvergate Bank, as instructed by FTX. Each of the Plaintiffs has yet to recover any of the

10
money entrusted to Silvergate.

11
Plaintiffs sued Defendants Silvergate Bank, its parent company, Silvergate Capital

12
Corporation, and its former CEO, Alan Lane, for aiding and abetting FTX's fraud,

13
conversion, and breaches of fiduciary duty, and for negligence, unfair competition, and unjust

14
enrichment. Plaintiffs allege Defendants shared responsibility for their losses because they

15
knowingly or negligently accepted FTX customer deposits into non-FTX accounts controlled

16
by Alameda Research, purportedly a separate company actually owned and operated by SBF.

17
The Court previously denied Defendants' motion to dismiss in a 66-page order.  Defendants

18
have moved for reconsideration or interlocutory appeal of the Court's Order.

19
Silvergate's business was largely crypto-related, and Silvergate collapsed shortly after

20
FTX.  Silvergate Bank announced it would liquidate in March 2023, and in September 2024,

21
Silvergate's parent company, Silvergate Capital Corporation, filed its own Chapter 11

22
bankruptcy, staying this action under 11 U.S.C. § 362(a)(1). With the bank in liquidation, the

23
holding company in bankruptcy, and any available insurance depleted by defense costs and a

24
competing securities class action, Class members (unsecured creditors in the Silvergate

25
bankruptcy) face a zero recovery  Pursuant to the Court's dispute resolution order, however,

26
Plaintiffs negotiated a settlement providing for a $10 million non-reversionary fund, an

27
outcome Plaintiffs and their counsel consider the best available. The settlement is subject to

28

the approval of both this Court and the Silvergate bankruptcy court.

Without this Settlement, the Class faces the prospect of discharge of their claims against Silvergate Capital in bankruptcy, and the possibility the Silvergate bankruptcy court accepts Silvergate's setoff defense, by virtue of the FTX bankruptcy plan that presently proposes to pay Class Members at least 118% of the funds that were in their FTX accounts when they were frozen upon FTX's bankruptcy. There is also a risk the FTX bankruptcy court could find that Class Members' claims against Silvergate belong to the FTX estate, depriving Plaintiffs and other Class Members of standing to pursue them. Defendants also assert numerous procedural and merits defenses, including defenses to class certification and Plaintiffs' core theory that Defendants deliberately lent their services to FTX's diversion of funds.  The $10 million settlement fund here is thus a substantial recovery against these Defendants in the face of potentially dispositive defenses.

With the Silvergate bankruptcy ongoing, and the funds available to satisfy the various constituencies in bankruptcy rapidly diminishing, Plaintiffs now move for preliminary approval of the proposed settlement. Plaintiffs propose to defer submission of a plan for notice and distribution of settlement funds until further developments in the FTX litigation. Plaintiffs have had preliminary discussions with FTX Debtors' counsel and with proposed class counsel in the ongoing FTX MDL proceedings (who have also requested that the MDL court defer notice of several partial settlements, pending further developments in bankruptcy court).  Plaintiffs are optimistic they will ultimately reach agreement on a proposal for notice and distribution of settlement funds through the FTX bankruptcy. But the FTX bankruptcy and confirmed plan are complex and these discussions will take time to finalize and document with the precision and details the Court will need to approve a notice plan and a proposed distribution formula.

While the parties could defer seeking preliminary approval until every last detail of the class settlement is worked out, there are risks in doing so.  Plaintiffs believe it imperative to secure the $10 million fund for eventual distribution, given Silvergate's rapidly evolving

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR PRELIMINARY APPROVAL

bankruptcy and the attendant cash diminution of Silvergate's limited resources. Accordingly, Plaintiffs now respectfully request that the Court grant the proposed Settlement preliminary approval, while deferring submission of a plan for notice and allocation of the settlement fund. Plaintiffs will ask the Court to determine whether to approve the plan for dissemination of the notice and the plan of allocation only after Plaintiffs submit a filing with all relevant details. Granting preliminary approval now will allow the parties time to work through the details, and during that time the $10 million settlement fund will earn interest for the Class in escrow.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Complaint and Defendants' Motion to Dismiss

On May 19, 2023, Plaintiffs Nicole Keane, Joewy Gonzalez, and Golam Sakline, filed the operative Consolidated First Amended Class Action Complaint ("FAC") against Defendants. (Dkt. No. 14.[3]) They alleged six causes of action: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) unjust enrichment; (4) aiding and abetting conversion; (5) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code §§ 17200, *et seq.*; and (6) negligence. (FAC ¶¶ 214-47.)

The FAC alleged Class Members believed they were placing funds into an FTX account at Silvergate Bank in anticipation of executing cryptocurrency trades on the FTX trading platform, but instead their money was placed into *Alameda* accounts where it was commingled and converted by SBF and his confederates; and further alleged Defendants aided and abetted this fraud and breach of fiduciary duty by knowingly permitting the fraudulent transactions and commingling of funds, and by creating the Silvergate Exchange Network, or SEN, to ramp-up investment in cryptocurrency. *See Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1086-99 (S.D. Cal. 2024) (Montenegro, J.) (detailing allegations).

On June 19, 2023, Defendants moved to dismiss Plaintiffs' claims. (*See* Dkt. No. 16.) On March 20, 2024, recognizing the "unique circumstances" of this case, *see Bhatia*, 725 F.

---

[3] A fourth Plaintiff, Matson Magleby, voluntarily dismissed his claims. (*See* Dkt. No. 49.)

Supp. 3d at 1107, the Court denied their motion in its entirety, *see generally id.*, 725 F. Supp. 3d 1079.

On April 17, 2024, Defendants filed their Answer. (Dkt. No. 36.) The same day, they filed two motions seeking either reconsideration of the Court's Order, or permission for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Silvergate argued that the Court, in denying its motion to dismiss Plaintiffs' negligence claims, erred in finding it owed Plaintiffs a duty of care (*see* Dkt. No. 37), while Mr. Lane argued the Court failed to adequately consider the viability of Plaintiffs' claims against him personally (*see* Dkt. No. 39). The motions were fully briefed and pending when the parties reached an agreement in principle, now reflected in the Settlement Agreement ("SA"). (*See* Dkt. Nos. 46-47, 52, 54.) The Court had not yet issued a decision when the Silvergate Bankruptcy automatically stayed this case. (*See* Dkt. Nos. 64-65.)

## B.    Discovery Efforts

The parties have engaged in extensive discovery. On November 16, 2023—even before the Court's Order and the parties' Rule 26 conference—Plaintiffs propounded separate requests for production on each Defendant. The parties met and conferred to identify sources of relevant custodial and non-custodial data, search terms and custodians, and the relevant time period for searches for responsive documents, including negotiating over the scope of Defendants' preservation efforts. After the parties negotiated a protocol for the discovery of electronically searchable information ("ESI") (*see* Dkt. No. 56), Defendants produced data and 10,182 documents, exceeding 120,000 pages. (Joint Declaration of Proposed Class Counsel in Support of Motion for Preliminary Settlement Approval ["Jt. Decl."] ¶ 16.)

Proposed class counsel created a dedicated document database for this ESI, then analyzed and coded Defendants' productions. (*Id.* ¶ 17.) In addition, counsel pursued public records act requests from regulators; obtained valuable information from multiple interviews with confidential FTX informants; and retained experts to analyze the Class's potential damages. (*Id.*) These efforts and counsel's analysis facilitated productive discussions with

5

Defendants and helped the parties reach the resolution embodied in the Settlement.

Defendants took discovery from the Plaintiffs, who provided separate responses and objections, and produced relevant documents. (*Id.* ¶ 18.) Plaintiffs also devoted time and effort to identifying documents and information to assist in their counsel's pre-filing investigations, participated in periodic telephone conferences with counsel, and reviewed and approved pleadings, including the Complaint and Settlement. (*Id.*).

### C.   Settlement Negotiations

On August 29, 2024, the parties engaged in a full-day mediation with the Honorable Layn R. Phillips (Ret.), of Phillips ADR Enterprises. (*Id.* ¶ 19.) Prior to mediation, the parties had exchanged the discovery described, and additional information to prepare for and facilitate a productive mediation. (*Id.*) They also exchanged detailed mediation briefs outlining their positions on the merits and settlement, including reply briefs. (*Id.*) Judge Phillips' staff then held pre-mediation calls with the parties, providing questions and issues for consideration and exposing the strengths and weaknesses of their positions. (*Id.*) Despite their considerable efforts, however, the parties were unable to reach agreement during the mediation. (*Id.*) Judge Phillips then held follow-up calls with the parties to continue negotiations. (*Id.*) On September 4, 2024, both parties ultimately accepted the mediator's proposal that the matter settle for $10 million. (*Id.*) Their agreement was then documented in the Settlement Agreement now before the Court. (*See id.* & Ex. A, Settlement Agreement ("SA").)

By the time the parties reached this agreement, Plaintiffs had learned Silvergate would file for bankruptcy. (*Id.* ¶ 20.) Although the amount Plaintiffs secured is relatively modest in comparison to the Class's claims, it came with Silvergate's promise to take the steps required in bankruptcy to protect the fund from other creditors, including those allowing the present motion. (*Id.*) Nevertheless, Plaintiffs are sensitive to the competing demands on Silvergate's resources, prompting this motion before final notice and distribution details have been worked out.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.    Bankruptcy Proceedings

On September 17, 2024, Silvergate filed a voluntary petition for relief under 11 U.S.C. § 101-1532, which is being administered by the United States Bankruptcy Court for the District of Delaware in a case styled *In re: Silvergate Capital Corporation et al.*, No. 24-12158 (KBO) (Bankr. D. Del.) (the "Silvergate Bankruptcy"). The Silvergate Bankruptcy automatically stayed this action under 11 U.S.C. § 362(a)(1). (*See* Dkt. Nos. 64-65.) On February 25, 2025, the bankruptcy court lifted the automatic stay under Section 362(a)(1) to permit the approval process to proceed in this Court. (Jt. Decl. ¶ 15, Ex. 8.)

## III.    TERMS OF THE SETTLEMENT

The Settlement is on behalf of a Settlement Class[4] of "[a]ll persons or entities who, between April 1, 2019, and November 11, 2022, sent or deposited fiat currency into an FTX- or Alameda-related account at Silvergate Bank and who, on November 11, 2022, still had an account on FTX.com or FTX.US that contained cryptocurrency, fiat currency, or both." (SA ¶ 1.23.) It provides that, in exchange for a "full and final release, settlement, and discharge of all Settlement Class Released Claims," Defendants will pay $10 million. (*Id.* ¶¶ 1.10, 1.11, 1.27, 2.1, 3.2, 6.4, 9.3.) All settlement related expenses, including fees and costs payable to proposed class counsel will be deducted from the non-reversionary settlement fund.

The Settlement Agreement also provides procedures vis-à-vis the Silvergate Bankruptcy. First, "the parties shall stipulate to relief from the automatic stay and seek District Court approval of the Settlement pursuant to Rule 23." (*Id.* ¶ 4.1.) Then, "[a]fter the District Court has issued a Final Approval Order and Judgment, the Agreement shall be subject to Bankruptcy Court approval," and "Defendants shall take all actions necessary in the Bankruptcy Court to obtain approval of and implement th[e] Agreement" (*id.* ¶ 4.2; *see also id.* ¶ 4.3 ("The Parties shall cooperate, assist, and undertake all reasonable actions to support Silvergate . . . in seeking the Bankruptcy Court's approval of this Agreement . . . pursuant to Federal Rule of Bankruptcy 9019[.]"). If, however, "the Bankruptcy Court

---

[4] Capitalized terms have the same meaning as in the Settlement Agreement.

declines to approve th[e] Agreement or any portion thereof, then any Party may terminate th[e] Agreement." (*Id.* ¶ 4.4.)

Finally, the Settlement Agreement provides that "Class Counsel may apply to the District Court for a Fee and Expense Award from the Settlement Fund," but that "Plaintiffs' approval of th[e] Agreement, and Class Counsel's support of the Agreement, are not contingent on the amount of the Fee and Expense Award." (*Id.* ¶ 9.1.) Similarly, "Plaintiffs may apply for Service Awards" (*id.* ¶ 10.1), but "Plaintiffs' approval of the Settlement Agreement is not contingent on their making an application for a Service Award, or the District Corut approving any application for a Service Award (*id.* ¶ 10.2).

## IV. LEGAL STANDARD

"The claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned[.]'" *Martinez v. Univ. of San Diego*, 2024 WL 4713891, at *10 (S.D. Cal. Nov. 7, 2024) (Montenegro, J.) (quoting *In re Hyundai & Kai Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)). "A court may approve a class action settlement of a class only 'after a hearing and on finding that it is fair, reasonable, and adequate,' and that it meets the requirements for class certification." *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *2 (S.D. Cal. Oct. 30, 2020) ["*Regulus*"] (quoting Fed. R. Civ. P. 23(e)(2)).

## V. ARGUMENT

### A. The Court Will Likely Be Able Certify the Class

At the preliminary approval stage, "if a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, advisory committee notes (2018 amendment). All the requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

### 1.    The Requirements of Rule 23(a) are Satisfied

#### a.    Numerosity

A class action satisfies the numerosity requirement if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quotation omitted). This is typically true "when class size exceeds 40 members[.]" *Mandalevy v. Bofi Holding Inc.*, 2022 WL 4474263, at *4 (S.D. Cal. Sept. 26, 2022) (citation omitted); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 650 (9th Cir. 2010). The Settlement Class here is comprised of "[a]ll persons or entities who, between April 1, 2019 and November 11, 2022, sent or deposited fiat currency into an FTX- or Alameda-related account at Silvergate Bank and who, on November 11, 2022, still had an account on FTX.com or FTX.US that contained cryptocurrency, fiat currency, or both." (SA ¶ 1.23.) Although the exact number of Settlement Class Members is presently unknown, it is likely in the thousands, well exceeding that minimal threshold. *See, e.g.*, *In re FTX Trading Ltd., et al.*, No. 22-11068-JTD (Bankr. D. Del.) ["FTX Bankruptcy"], ECF No. 14301 at 14 (disclosure statement for debtors' bankruptcy plan providing for distributions of over $8 billion to customer creditors); *Id.*, ECF No. 2463 at 8 (over 36,000 customer claims filed as of August 2023); *Id.*, ECF 5619 at 1 (statement by Committee of Unsecured Creditors references "millions of credit claims" against debtors in the bankruptcy case).

#### b.    Commonality

"Rule 23(a)(2) commonality requires 'questions of fact or law common to the class,' though all questions of fact and law need not be in common." *Regulus*, 2020 WL 6381898, at *3 (quoting *Hanlon*, 150 F.3d at 1026). The "burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon*, 150 F.3d at 1020). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted), which exists "where a defendant has engaged in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL

1    4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.

2    1998) (listing cases)). ). Commonality is "construed permissively," *Hanlon*, 150 F.3d at 1019,

3    and to satisfy Rule 23(a)(2), "even a single common question" will do. *Wal-Mart Stores, Inc.*

4    *v. Dukes*, 564 U.S. 338, 359 (2011) (citation, alterations, and quotation marks omitted). Here,

5    whether Defendants knew of and substantially assisted SBF's fraud, breaches of fiduciary

6    duty, and conversion of customer assets are issues common to the class, satisfying the

7    requirement. *See Newton v. Am. Debt Servs., Inc.*, 2015 WL 3614197, at *7 (N.D. Cal. June

8    9, 2015) (Finding commonality because "[i]f Newton shows Global or RMBT had actual

9    knowledge of ADS's or QSS's Proraters Law violations, and that either entity substantially

10    assisted in those violations, she will have shown that those entities are indirectly *liable* for

11    UCL violations as aiders and abettors.'").

### c.    Typicality

13    "Rule 23(a)(3) requires that the plaintiff show that 'the claims of the representative

14    parties are typical of the claims or defenses of the class.'" *Regulus*, 2020 WL 6381898, at *3

15    (quoting Fed. R. Civ. P. 23(a)(3)). "The purpose of the typicality requirement is to assure that

16    the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar*

17    *Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotation omitted). Like

18    commonality, the typicality requirement is interpreted "permissive[ly]," and "requires only

19    that the representative's claims are 'reasonably co-extensive with those of absent class

20    members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124

21    (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020).

22    Here, Plaintiffs' claims are typical of the claims of the other Class Members. Like

23    every other Class Member, Plaintiffs sent or deposited fiat currency into an FTX- or

24    Alameda-related account at Silvergate Bank, had FTX accounts with positive balances when

25    FTX filed for bankruptcy, and have been unable to recover their funds since. Because

26    Plaintiffs' injury—the loss of their investment—arises from the same course of conduct that

27    injured other Class Members—Silvergate's aiding and abetting FTX—their claims rely on

28

10

the same theories and evidence, satisfying the typicality requirement. *See Regulus*, 2020 WL 6381898, at *3 ("Lead Plaintiff's claims are typical of those of the class, as they advance the same claims, share identical legal theories, and allegedly experienced the same losses from [Defendant's] alleged misrepresentations.").

### d.    Adequacy

"Under Rule 23(a)(4), representative parties must be able to 'fairly and adequately protect the interest of the class.'" *Mandalevy*, 2022 WL 4474263, at *5 (quoting Fed. R. Civ. P. 23(a)(4)). In analyzing this requirement, "the Court must ask two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)); *see also Hanlon*, 150 F.3d at 1020. Adequacy is presumed where, as here, a fair settlement was negotiated at arm's length. 2 NEWBERG ON CLASS ACTIONS §§ 11.28, 11.59.

Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs and their counsel do not have any conflicts with Class Members and have vigorously prosecuted this case. Plaintiffs agreed to serve in a representative capacity, communicated with their attorneys, fulfilled their discovery obligations and have acted in the best interests of the other Class Members. *See Mergens v. Sloan Valve Co.*, 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where plaintiff had no interests antagonistic to the class); *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (plaintiffs were adequate when they "have been active participants in the litigation"). (*See* Keane Decl. ¶ 4; Gonzalez Decl. ¶ 4; Sakline Decl. ¶4.)

Proposed class counsel, Girard Sharp, LLP (GS), Blood Hurst & O'Reardon, LLP (BHO), Fitzgerald Monroe Flynn PC (FMF), and Levine Kellogg Lehman Schneider +

Grossman LLP (LKLSG), have devoted significant time and resources to litigating on behalf of the Class and to protecting the Class's interests since filing the lawsuits that eventually became this Consolidated Class Action. Each firm began investigating Silvergate Bank soon after FTX's collapse. The firms then agreed to work cooperatively to efficiently and effectively pursue the case for the Class, prepare a consolidated complaint, respond to Silvergate's motion to dismiss, undertaking and evaluating discovery, and ultimately settling within two years under precarious circumstances (*i.e.* with Silvergate entering bankruptcy). (*See* Jt. Decl. ¶ 28, Exs. 1-4 (firm resumes)). Plaintiffs and Counsel thus satisfy Rule 23(a)'s adequacy requirement.

### 2. The Requirements of Rule 23(b)(3) are Satisfied

#### a. Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *see also Hanlon*, 150 F.3d at 1022. "[E]ven if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai*, 926 F.3d at 557 (quoting *Tyson Foods*, 577 U.S. at 453). Moreover, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *Id.* at 558; *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005-1006 (9th Cir. 2020).

"In evaluating predominance, courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020) (citation omitted). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) (citations omitted); *accord Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 1139672, at *3 (S.D. Cal.

Mar. 9, 2020) (predominance satisfied where "liability would be determined by looking at [defendant]'s uniform policies and practices"). Here, a pragmatic assessment of the action and each Class Member's claim reveals that the same core facts and legal issues dominate this litigation. The predominance requirement is thus satisfied.

### b.    Superiority

Rule 23(b)(3) requires that a class action be superior to other methods for the fair and efficient adjudication of the controversy. This "inquiry 'requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case.'" *Scheuneman v. Arena Pharms., Inc.*, 2020 WL 3129566, at *3 (S.D. Cal. June 12, 2020) (quoting *Hanlon*, 150 F.3d at 1023). A "relatively limited potential recovery for the class members as compared with the costs [of] litigating the claims . . . support[s] the conclusion that a class action is superior to other methods . . . ." *See id.*; *accord Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) (The "superiority requirement is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" (quotation omitted); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). In making this determination, Rule 23(b)(4) sets forth the following factors:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Considering these factors, a class action is the best method to fairly and efficiently adjudicate Class Members' claims against Silvergate.

First, Class Members have little interest in individually controlling and prosecuting separate actions. Most Class Members are retail cryptocurrency investors with relatively modest claims in relation to the costs of litigation. The largest loss among Plaintiffs, for example, was under $100,000. On an individual basis, Class Members' potential damages are

dwarfed by litigation costs that have so far included substantial document storage and review costs, and engagement of expert witnesses. Because of the "substantial disparity between litigation costs and what plaintiffs hope to recover. . . . [i]t is unlikely that individual claims would ever be pursued." *In re Ariz. Theranos, Inc. Litig.*, 2020 WL 5435299, at \*9 (D. Ariz. Mar. 6, 2020). Indeed, in the 2 ½ years since FTX's collapse, only one entity filed an individual lawsuit alleging similar claims, and it ultimately dropped the case.

The absence of individual cases suggests individuals have no particular desire to control their own cases, favors a finding of superiority, since there is no other pending litigation by individual Class Members concerning these claims. *See id.* at \*10 (where "a multiplicity of individual suits against one or more of the defendants" was "highly unlikely," this factor weighed in favor of finding superiority). Concentration of the litigation in the Southern District of California is also desirable, as Defendants all reside here. *See id.* (even where "[t]here may be substantial evidence in other jurisdictions," finding superiority where litigation concentrated in jurisdiction that "was the center of Theranos' and Walgreens' initial roll-out of the blood testing program"). Finally, because this is a settlement, there are no manageability issues that defeat superiority. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *In re Hyundai*, 926 F.3d at 556-57 ("[M]anageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

## B. The Court Should Grant Preliminary Approval of the Proposed Settlement

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Martinez v. Univ. of San Diego,* No. 3:20-CV-01946-RBM-VET, 2024 WL 4713891, at \*12 (S.D. Cal. Nov. 7, 2024) (quoting *Hanlon*, 150 F.3d at 1026). In determining whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief

provided for the class is adequate"; and "the proposal treats class members equitably relative to each other." *Martinez*, 2024 WL 4713891 at *10-1 (citing Fed. R. Civ. P. 23(e)(2)).

Preliminary approval "is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *6 (S.D. Cal. Mar. 16, 2016) ["*Gucci*"] (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Regulus*, 2020 WL 6381898, at *2 (citing *Hanlon*, 150 F.3d at 1027).

### 1.    The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel adequately represented the class and whether the settlement proposal was negotiated at arm's length. To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

The Settlement in this case is the product of serious, informed, non-collusive negotiations between the parties, after substantial litigation, including an Order on Defendants' motion to dismiss; a fully-briefed motion for reconsideration or interlocutory appeal of that Order; discovery efforts involving the production and review of thousands of pages of internal documents; extensive investigation by proposed class counsel; and an adversarial mediation process before a highly-qualified mediator. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 (Arm's-length negotiations typically take place over an extended period with experienced counsel on both sides, each with an understanding of the strengths and weaknesses of their own and the opposing party's claims).

1     First, that the Settlement was reached only after litigation and significant discovery

2   shows it resulted from arm's-length negotiations. *See Campbell v. Facebook, Inc.*, 951 F.3d

3   1106, 1122, 1127 (9th Cir. 2020) (case being "nearly [at] the close of discovery" indicated

4   "the settlement's substantive fairness"); *In re Chinese-Manufactured Drywall Prods. Liab.*

5   *Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020)

6         Counsel on both sides have zealously advocated for their clients. . . as evidenced

7         by the extensive discovery, motions practice, and significant resources expended

8         in this case. The parties entered the negotiation with the experience and

9         institutional knowledge necessary to successfully negotiate on behalf of their

10        clients, and the settlement was accordingly achieved as a result of the adversarial

11        process.

12        Second, the Settlement was negotiated with the assistance of Judge Layn Phillips, "a

13   nationally recognized mediator of complex cases and class actions." *Voulgaris v. Array*

14   *Biophrama*, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021); *cf. Atlas v. Accredited Home*

15   *Lenders Holding Co.*, 2009 WL 3698393 (S.D. Cal. Nov. 2, 2009) (granting settlement

16   approval and citing the supervision of Judge Phillips over the mediation process). Through

17   the mediation process, the strengths and weaknesses of the respective claims and defenses

18   were extensively explored. (Jt. Decl. ¶ 19.) Thus, at the time the Settlement was reached,

19   proposed class counsel was well-positioned to assess its fairness. The "use of a mediator and

20   the presence of discovery 'support the conclusion that the Plaintiff was appropriately

21   informed in negotiating a settlement.'" *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9

22   (N.D. Cal. Oct. 27, 2015); *see also Gucci*, 2016 WL 1045961, at *7 ("proposed Settlement

23   was the result of 'serious, informed, and non-collusive arm's-length negotiations'" where

24   parties engaged in "mediation efforts overseen by retired United States Magistrate Judge

25   Edward Infante" (citations omitted)); *Hale v. Manna Pro Prod., LLC*, 2020 WL 3642490, at

26   *11 (E.D. Cal. July 6, 2020) ("extensive discovery and arm[']s-length, mediator-guided

27   negotiations all suggest the settlement agreement is not the product of collusion"); *Rosales v.*

28

*El Rancho Farms*, 2015 WL 4460635 (E.D. Cal. July 21, 2015) ("[T]he Ninth Circuit has determined the 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'" (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ["*Bluetooth*"]).

Third, the all-cash nature of the Settlement, especially in the face of significant risks the Class faced, demonstrates it was achieved through vigorous litigation, rather than collusion, since "cash . . . is a good indicator of a beneficial settlement," *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ["*W. Pub'g*"], and a sign that Plaintiffs' counsel did not subvert the Class's interests to Defendants' interests "in exchange for red-carpet treatment on fees," *see Bluetooth*, 654 F.3d at 947 (quotation omitted).

Finally, proposed class counsel have considerable experience prosecuting class actions, particularly those involving financial frauds; they understand the potential upside and risks attendant to this case; and strongly endorse the Settlement. (*See* Jt. Decl. ¶ 27, Exs. 1-4.). The Ninth Circuit has "held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *W. Pub'g*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)). "Generally, '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Allen*

*v. Similasan Corp.,* 2017 WL 1346404, at *5 (S.D. Cal. Apr. 12, 2017) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *accord In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 6091259, at *10 (N.D. Cal. Oct. 18, 2016) ("The Settlement is also the product of arm's-length negotiations by experienced Class Counsel; as such, it is entitled to an initial presumption of fairness." (alterations and quotation omitted)).

In sum, the Settlement is the product of serious, informed, non-collusive negotiations between the Parties conducted by experienced counsel, which warrants preliminary approval.

### 2. The Settlement Treats All Class Members Equitably

Whether a settlement treats class members equitably turns on whether there is any disparity among what class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015). The Settlement treats the Class Representatives and any Class Members equitably, since funds will be distributed pursuant to an allocation plan applicable to all Class Members, including the Class Representatives, and notice will be given before any plan of allocation is approved and implemented.  That the Class Representatives will move for service awards does not change this analysis. *See Regulus*, 2020 WL 6381898, at *5 ("[T]he service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members" where "[u]nder the Settlement Agreement, class members who have submitted timely claims will receive payments on a *pro rata* basis . . . ." (citation omitted)); *see also Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (no preferential treatment where settlement "provides equal relief to all class members" and "distributions to each class member—including Plaintiff—are calculated in the same way").

### 3. The Relief Provided to the Class is Adequate.

In determining whether the relief provided to Class Members is adequate, Rule 23 directs courts to consider the following factors: (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class";[5] (3) the terms of any proposed award of attorney's fees"; and (4) "any agreement required to be identified under Rule 23(e)(3)." *See Martinez*, 2024 WL 4713891 at *10 (citing Fed. R. Civ. P. 23(e)(2)).

---

[5] As explained below, Plaintiffs request the Court to defer the allocation plan and notice plan to allow time for the parties to determine the most cost effective way to notice and distribute the fund and to coordinate efforts with the FTX MDL and FTX Bankruptcy where appropriate.

1

2

### a.    The Strengths of Plaintiffs' Case and Risk, Expense, Complexity, and Duration of Further Litigation

Plaintiffs and their counsel believe the theory underlying this case was and is strong on the merits, but despite that, this case faces significant challenges to Plaintiffs establishing liability and obtaining damages. Moreover, at the time the Settlement was reached, there was a risk Silvergate would file for bankruptcy, which proved to be the case. If litigation were to resume in this court, to prevail on their aiding and abetting claims, Plaintiffs would have had to obtain and protect on appeal an order certifying the class, prove that FTX breached duties to Class Members; that Defendants were aware of those breaches and substantially assisted in them.  Defendants claim they were also victims of SBF's fraud, rather than co-conspirators, a claim Defendants argue was borne out by the DOJ's decision not to prosecute Silvergate or Lane.

To prevail on their negligence claim, Plaintiffs would have had to show that Defendants owed the Class a duty of care and breached it. Defendants vehemently contest their duty of care to the Class, as evidenced by their Motion for Reconsideration, and would have appealed a judgment against them at trial. That would result in further uncertainty, given the novel issues and circumstances, and delay, likely for years, during which time Silvergate's remaining assets would be further dissipated.

Even if Plaintiffs prevailed on liability at trial, Defendants would have argued that Plaintiffs' damages model was too speculative, and that they were entitled to set off any recovery from the FTX Bankruptcy. And even if Plaintiffs prevailed on liability and established damages, Defendants are essentially judgment proof. FTX was Silvergate Bank's largest customer and its collapse signaled the end of Silvergate Bank as well.

Silvergate also faces a securities class action, derivative action, and numerous regulatory investigations, all of which are rapidly consuming Defendants' remaining insurance coverage. Defendant Lane does not represent a significant source of recovery, as his coverage is almost depleted and he lacks sufficient personal wealth to satisfy a judgment

commensurate with the scale of this litigation. Defendants' relative lack of resources creates additional risks for the Class. *See Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016) (that a defendant does not have the ability to pay a larger settlement weighs in favor of finding relief to be adequate). The Ninth Circuit recognizes that "a settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992).

Continued litigation is unlikely to generate more than is immediately available through the Settlement. Given Silvergate Bank's liquidation, Silvergate Capital's bankruptcy, and costly and complex litigation proceeding on multiple fronts, further delay would have certainly diminished any potential recovery for Class Members. The elimination of delay and expense weighs in favor of approval. *Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *12 (C.D. Cal. July 29, 2010) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."); *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant."). Given the uncertainties balanced against the proposed Settlement, these factors favor preliminary approval.

### b.    The Risk of Maintaining Class Status Through Trial

Plaintiffs also faced risks obtaining a certification order.  If Plaintiffs did obtain certification, moreover, there would be a risk in maintaining it through trial. First, Defendants would almost certainly seek a Rule 23(f) appeal, and likely repeat challenges to Plaintiffs' negligence claims, even if the Court declined to permit an interlocutory appeal. At a minimum, this would result in further delay and expense to the Class. Second, a "district court may decertify a class at any time." *W. Pub'g*, 563 F.3d at 966 (citation omitted).

20

Decertification happens with some regularity, including by courts in this district. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, 2016 WL 2610107, at *5-8 (S.D. Cal. May 6, 2016), *aff'd*, 926 F.3d 528 (9th Cir. 2019); *Yeoman v. Ikea U.S.A. W., Inc.*, 2014 WL 7176401, at *7 (S.D. Cal. Dec. 4, 2014), *vacated and remanded sub nom.* on other grounds in *Medellin v. Ikea U.S.A. W., Inc.*, 672 Fed. App'x 782 (9th Cir. 2017); *see also Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *6 (S.D. Cal. Dec. 9, 2015); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 643 (S.D. Cal. 2015) (partially granting "motion to decertify the subclasses on the issue of damages"). This factor thus weighs in favor of preliminary approval.

### c.    The Amount Offered in Settlement

The settlement amount is fair, reasonable and adequate in relation to the procedural and merits challenges Plaintiffs face. Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Mendoza v. Hyundai Motor Co.*, Ltd, 2017 WL 342059, at *6 (N.D. Cal. 2017) (citation omitted). Further, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. 2016) (cleaned up). Moreover, "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D. Cal. 2012); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case.").

### d.    The Terms of Any Proposed Award of Attorney's Fees.

The settlement is for payment of a non-reversionary cash fund, and the fee application will seek a percentage of the fund. "[T]he prospect of fraud or collusion is substantially lessened where, as here, the settlement agreement leaves the determination and allocation of

21

attorney fees to the sole discretion of the trial court," *Chinese Drywall*, 424 F. Supp. 3d at 486. Nothing about the proposed fee award gives reason to doubt the fairness of the settlement.

### e.    No Separate Agreements Weigh Against Preliminary Approval

Rule 23(e)(3) requires the parties to "identify[] any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). The only separate agreement between the parties relates to the threshold amount of opt-outs necessary to trigger Defendants' right to terminate the settlement. (*See* Jt. Decl. ¶ 30.) "This type of provision is known as a 'blow-up' provision and is common in securities class actions" and other class action settlements. *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7 (S.D. Cal. Oct. 13, 2022). The non-disclosure of the exact threshold does not alter what relief Class Members will receive, nor impact the Court's and Class Members' ability to assess the proposed settlement's fairness, adequacy, and reasonableness. Courts regularly hold that the existence of such an agreement and non-disclosure of its precise terms does not affect the fairness or adequacy of a proposed settlement. *See id.*; *Seb Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at *7 (N.D. Cal. Feb. 10, 2022) (Keeping blow-up confidential "did not affect the fairness and adequacy of the settlement or undermine class members' ability to independently assess the fairness, reasonableness, and adequacy of the settlement."). To the contrary, "[t]here are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts." *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017); *accord In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015).

### C.    The Court Should Defer the Allocation Plan, Notice, and Final Approval

If the Court grants preliminary approval, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). In general, "notice must be issued sufficiently in advance of the objection deadline and/or fairness hearing to make those opportunities meaningful." 3 Newberg and Rubenstein on

22

Class Actions § 8:16 (6th ed.). But "Rule 23 does not dictate any specific time frame in which the notice must be dispatched." *Id.*; *accord Beale v. EdgeMark Fin. Corp.*, 1995 WL 631840, at *1 (N.D. Ill. Oct. 23, 1995) ("[W]hile Rule 23(c)(2) mandates that notice be sent, it fails to specify when such notice must issue, thus leaving the question to the sound discretion of the Court."). Accordingly, "the court may decide to postpone giving formal notice under Rule 23(c)(2) if there is a reason for the delay and it would not prejudice those class members who are not before the court." Wright & Miller, Fed. Prac. & Proc. Civ. § 1788 (3d ed.).

Courts have deferred approval of a class notice under diverse circumstances. *See, e.g.*, *White v. Milk & Honey at Wesley Chapel, LLC*, 2022 WL 1714858, at *3 (N.D. Ga. Jan. 4, 2022) (the court "will therefore defer ruling on Plaintiffs' proposed class notice until the parties have conferred" on aspects of the notice that were in dispute); *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013) (deferring notice for six months to permit further discovery); *Barnes v. D.C.*, 924 F. Supp. 2d 103, 107 (D.D.C. 2013) (deferring notice "until after the Court determines liability").

For example, it is common to defer class notice for a settlement when the parties expect that another notice, either for a litigation class or another settlement, will be required soon. *See In re Xyrem Antitrust Litig.*, No. 3:20-md-02966 (N.D. Cal. March 3, 2023), ECF No. 423 at 29; *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-02311 (E.D. Mich. July 13, 2018), ECF No. 924 at 32-33. Even when notice is not explicitly deferred, notice approval may follow class certification by many months. *See*, *e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269 (E.D.N.Y. 2021) (approving class notice more than ten months after granting class certification).

Here, granting preliminary approval now, while deferring approval of a Notice Plan (including CAFA notice) and Plan of Allocation for 120 days from the entry of the Preliminary Approval Order, with the possibility of a further extension for good cause shown, will further the interests of the Class. There are several pending cases related to the FTX and Silvergate collapses. Given the posture of each case, the approach Plaintiffs propose will

secure the settlement recovery for the Class now, while giving proposed class counsel additional time to determine the most cost-effective way to give notice and distribute the fund.

With Silvergate Bank in liquidation, and Silvergate Capital Corporation in bankruptcy, creditors and preferred shareholders are competing for a share of a dwindling asset pool. One of these assets is Silvergate Capital's limited remaining cash-on-hand from which the Settlement will be paid. Silvergate's creditors and its preferred shareholders, who are the residual beneficiaries of estate assets, are all vying for portions of that same pot. An order granting preliminary approval will ensure that the agreed $10 million Settlement amount is set aside. Absent preliminary approval, events in the Silvergate bankruptcy could overtake the parties to this action.

Separately, the FTX entities are in bankruptcy, and there is ongoing FTX-related litigation in the Southern District of Florida MDL proceedings. *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.) ("FTX Bankruptcy"); *In re FTX Cryptocurrency Exchange Collapse Litigation*, No. 23-md-03076 (S.D. Fla.) ("FTX MDL").[6] The plaintiffs in the FTX MDL have reached an agreement with the FTX Bankruptcy "to coordinate settlement administration through the bankruptcy estate, greatly simplifying the distribution process and reducing costs associated therewith." (FTX MDL, ECF No. 780 at 1.) The FTX MDL plaintiffs have asked the MDL court to defer a settlement class notice until the claims against certain non-settling defendants are resolved, so that "no unnecessary costs are incurred" and so that "the FTX Debtors [may] fully establish and operate their distribution mechanism in the first instance, ensuring that when MDL funds are ready to be distributed all is running smoothly." *Id.* at 2.

Independently implementing a notice plan here would be costly and time-consuming,

---

[6] At both parties' urging, the JPML excluded this action from the MDL. *In re FTX Cryptocurrency Exch. Collapse Litig.*, 677 F. Supp. 3d 1379, 1381 (J.P.M.L. 2023) ("Based on this record, we do not intend to include the claims against Signature Bank and the Silvergate Bank defendants."). (*See also* Jt. Decl. ¶ 12.)

taking months and significantly depleting the Settlement Fund. Proposed class counsel are in communication with FTX Bankruptcy and FTX MDL counsel. The FTX Bankruptcy has already developed a creditor database that includes the Settlement Class Members in this case. Plaintiffs anticipate coordinating notice and distribution with the FTX Bankruptcy, but additional time is needed to work through the details and reach an agreement. (Jt. Decl. ¶¶ 24-25.) A finding from this Court that it "will likely be able to approve the proposal under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal" under Rule 23(e)(1)(B) will ensure the Settlement Fund remains available for Class Members as the Silvergate and FTX Bankruptcies move forward, and will allow proposed class counsel to develop a plan for notice and allocation of the fund in the meanwhile.

Within 120 days of the Court's entry of the Preliminary Approval Order, Plaintiffs expect to be in a better position to determine the most efficient method for giving Notice and distributing the Settlement Fund. (Jt. Decl. ¶ 25.) Coordination across the many parties in the various FTX and Silvergate cases will take time, but it is necessary to maximize the recovery for the Class. This deferral will not prejudice any absent class members because absent class members are not required to do anything now. Deadlines to submit claims, opt out, or object have not been set and will be part of the notice proposal. Plaintiffs therefore request a 120-day deferral of notice and allocation issues, subject to a further extension at the Court's discretion, upon an adequate showing of cause.

## VI.    CONCLUSION

The Court should certify the Settlement Class, grant the motion for preliminary approval, and defer ruling on a Notice Plan and Plan of Allocation pending a further submission by Plaintiffs within 120 days of the Court's entry of the Preliminary Approval Order.

Dated: February 27, 2025                    Respectfully Submitted,

                                            /s/ *Daniel C. Girard*

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR PRELIMINARY APPROVAL

DANIEL C. GIRARD
*dgirard@girardsharp.com*
ADAM E. POLK
*apolk@girardsharp.com*
TOM WATTS
*tomw@girardsharp.com*
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800

TIMOTHY G. BLOOD
*tblood@bholaw.com*
THOMAS J. O'REARDON
*toreardon@bholaw.com*
JAMES M. DAVIS
*jdavis@bholaw.com*
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA 92101
Phone: (619) 338-1100

JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
**FITZGERALD MONROE FLYNN PC**
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

JASON KELLOGG
*jk@lklsg.com*
VICTORIA J. WILSON
*vjw@lklsg.com*
MARCELO DIAZ-CORTES
*md@lklsg.com*
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

100 Southeast Second Ave., 36th Floor
Miami, Florida 33131
Telephone: (305) 403-8788

***Counsel for Plaintiffs***