**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

**GIRARD SHARP LLP**
DANIEL C. GIRARD
JORDAN ISERN
SAMHITA COLLUR
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
jisern@girardsharp.com
scollur@girardsharp.com

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
MELANIE R. MONROE (SBN 275423)
TREVOR M. FLYNN (SBN 253362)
PETER GRAZUL (SBN 342735)
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Tel: 619/215-1741
jfitzgerald@fmfpc.com
mmonroe@fmfpc.com
tflynn@fmfpc.com
pgrazul@fmfpc.com

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
JASON KELLOGG *(pro hac vice)*
MARCELO DIAZ-CORTES *(pro hac vice)*
100 Southeast Second Street, 36th Floor
Miami, FL 33134
Tel: 305/803-8788
jk@lkslg.com
md@lklsg.com

***Counsel for Plaintiffs***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>SILVERGATE CAPITAL CORPORATION | Case No: 23-cv-01406-RBM-BLM<br><br>**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br>Judge: Hon. Ruth Bermudez Montenegro<br>Hearing Date: _____, 2025<br>Courtroom: 5B<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# <u>TABLE OF CONTENTS</u>  Toc203738027

NOTICE OF MOTION ...................................................................................................1

MEMORANDUM ..........................................................................................................2

I.      INTRODUCTION ...............................................................................................2

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................3

      A.     The Complaint and Defendants' Motion to Dismiss .................................3

      B.     Discovery Efforts ......................................................................................3

      C.     Settlement Negotiations .............................................................................4

      D.     Terms of the Settlement ............................................................................4

      E.     Bankruptcy Proceedings.............................................................................4

III.    INFORMATION RELEVANT TO COURT'S BRIEFING ORDER ..................5

      A.     Issues No. 1 and 2: Notice Plan, Plan of Allocation, and CAFA
            Notice ........................................................................................................5

      B.     Issue No. 3: Coordination With The MDL and the FTX
            Bankruptcy ................................................................................................7

      C.     Issue No. 4: Class Size and Composition ..................................................8

IV.     LEGAL STANDARD...........................................................................................9

V.      ARGUMENT .....................................................................................................10

      A.     The Court Will Likely Be Able Certify the Class....................................10

          1.     The Requirements of Rule 23(a) are Satisfied..............................10

              a.     Numerosity ...........................................................................10

              b.     Commonality ........................................................................10

              c.     Typicality .............................................................................11

              d.     Adequacy ..............................................................................11

2.    The Requirements of Rule 23(b)(3) are Satisfied........................12

        a.    Predominance ................................................12

        b.    Superiority ..................................................12

B.    The Court Should Grant Preliminary Approval of the Proposed
      Settlement....................................................................12

        1.    The Settlement is the Result of Good Faith, Arm's-
              Length Negotiations by Well-Informed and Experienced
              Counsel .....................................................................13

        2.    The Settlement Treats All Class Members Equitably ................14

        3.    The Relief Provided to the Class is Adequate. ...........................15

              a.    The Strengths of Plaintiffs' Case and Risk,
                    Expense, Complexity, and Duration of Further
                    Litigation ...............................................................16

              b.    The Risk of Maintaining Class Status Through
                    Trial ....................................................................16

              c.    The Amount Offered in Settlement ...................................17

              d.    The Terms of Any Proposed Award of Attorney's
                    Fees and Service Awards. .............................................17

              e.    No Separate Agreements Weigh Against
                    Preliminary Approval .................................................20

C.    The Notice Plan Should Be Approved...................................................20

        1.    The Notice Plan Provides the Best Practicable Notice.................20

        2.    Objections and Opt Outs..........................................................22

D.    Appointment of the Settlement Administrator........................................23

E.    The Court Should Approve the Payment of Initial Expenses
      Prior to Final Approval ...................................................................23

F.    The Court Should Set A Final Approval Schedule.................................24

VI.    CONCLUSION.................................................................................................24

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Altamirano v. Shaw Indus., Inc.*

4

   2015 WL 4512372 (N.D. Cal. July 24, 2015)...................................................14

5

*Alvarez v. Farmers Ins. Exch.*

   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ...............................................20

6

*Amchem Prods., Inc. v. Windsor*

7

   521 U.S. 591 (1997) .......................................................................................12

8

*Amigon v. Safeway Constr. Enters., LLC*

   2024 WL 5040436 (E.D.N.Y. Dec. 9, 2024) ...............................................15

9

*Beaver v. Tarsadia Hotels*

10

   2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ..............................................19

11

*Bhatia v. Silvergate Bank*

   725 F. Supp. 3d 1079 (S.D. Cal. 2024)............................................................3

12

*Bhatia v. Silvergate Bank*

13

   725 F. Supp. 3d 1079 (S.D. Cal. 2024)............................................................3

14

*Boyd v. May Trucking Co.*

15

   2019 WL 12763009 (C.D. Cal. July 1, 2019) ..............................................21

16

*Campbell v. Facebook, Inc.*

   951 F.3d 1106 (9th Cir. 2020).......................................................................13

17

*Castro v. ABM Indus., Inc.*

18

   325 F.R.D. 332 (N.D. Cal. 2018) ..................................................................11

19

*Class Plaintiffs v. City of Seattle*

   955 F.2d 1268 (9th Cir. 1992).......................................................................16

20

*Coppel v. SeaWorld Parks & Ent., Inc.*

21

   2025 WL 1346873 (S.D. Cal. May 8, 2025) ................................................21

22

*Deatrick v. Securitas Sec. Servs. USA, Inc.*

   2016 WL 5394016 (N.D. Cal. Sept. 27, 2016) ............................................21

23

*Elkies v. Johnson & Johnson Servs., Inc.*

24

   2020 WL 10055593 (C.D. Cal. June 22, 2020) ......................................17, 22

25

*Fitzgerald v. Pollard*

26

   2024 WL 3262631 (S.D. Cal. July 1, 2024) ................................................19

27

*Hanlon v. Chrysler Corp.*

   150 F.3d 1011 (9th Cir. 1998)..........................................................10, 11, 12

28

iv

*Hunter v. Nature's Way Prod.*, LCC
    2020 WL 71160 (S.D. Cal. Jan. 6, 2020).................................................................19

*In re Ariz. Theranos, Inc. Litig.*
    2020 WL 5435299 (D. Ariz. Mar. 6, 2020) .........................................................12

*In re Bluetooth Headset Prods. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011).........................................................................14, 19

*In re BofI Holding, Inc. Sec. Litig.*
    2022 WL 2068424 (S.D. Cal. June 8, 2022).....................................................14, 15

*In re BofI Holding, Inc. Sec. Litig.*,
    2022 WL 9497235 (S.D. Cal. Oct. 13, 2022) .......................................................20

*In re Charles Schwab Corp. Sec. Litig.*
    2010 WL 1445451 (N.D. Cal. 2010).....................................................................21

*In re Google Location History Litig.*
    2024 WL 1975462 (N.D. Cal. May 3, 2024) ........................................................22

*In re Hydroxycut Mktg. and Sales Practices Litig.*
    2013 WL 5275618 (S.D. Cal. Sep. 17, 2013) ......................................................23

*In re MyFord Touch Consumer Litig.*
    2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) .....................................................15

*In re Omnivision Techs., Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................17

*In re Pac. Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir.1995)...................................................................................14

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)..................................................................................19

*In re Packaged Seafood Prods. Antitrust Litig.*
    2022 WL 228823 (S.D. Cal. Jan. 26, 2022)........................................................24

*In re Packaged Seafood Prods. Antitrust Litig.*
    2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ....................................................22

*In re Regulus Therapeutics Inc. Sec. Litig.*
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .................................................10, 11

*In re Zynga Inc. Sec. Litig.*
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015).......................................................13

*Jabbari v. Farmer*
    965 F.3d 1001 (9th Cir. 2020).............................................................................12

*Khoja v. Orexigen Therapeutics, Inc.*
  2021 WL 1579251 (S.D. Cal. Apr. 22, 2021) ................................................15

*Kim v. Space Pencil, Inc.*
  2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ..............................................16

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) ......................................................................13

*Lopez v. Velocity Transp. LLC*
  2024 WL 4957565 (S.D. Cal. Dec. 3, 2024) ...........................................19, 20

*Mandalevy v. Bofi Holding Inc.*
  2022 WL 4474263 (S.D. Cal. Sept. 26, 2022) .........................................10, 11

*McDonald v. CP OpCo, LLC*
  2019 WL 2088421 (N.D. Cal. May 13, 2019) ..............................................20

*McMorrow v. Mondelez Int'l, Inc.*
  2022 WL 1056098 (S.D. Cal. Apr. 8, 2022) ................................................19

*Mergens v. Sloan Valve Co.*
  2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) ..............................................11

*Mezzadri v. Med. Depot, Inc.*,
  2016 WL 5107163 (S.D. Cal. May 12, 2016) ...............................................10

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*
  2016 WL 2610107 (S.D. Cal. May 6, 2016), *aff'd*, 926 F.3d 528 (9th Cir. 2019) ............17

*Nelson v. Avon Prods., Inc.*
  2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ................................................21

*Newton v. Am. Debt Servs., Inc.*
  2015 WL 3614197 (N.D. Cal. June 9, 2015) ................................................10

*Rael v. Children's Place, Inc.*
  2020 WL 434482 (S.D. Cal. Jan. 28, 2020) .................................................22

*Rannis v. Recchia*
  380 Fed. App'x. 646 (9th Cir. 2010) ............................................................21

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*
  2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ............................................16

*Rodriguez v. Hayes*
  591 F.3d 1105 (9th Cir. 2010) ......................................................................11

*Rodriguez v. W. Pub'g Corp.*
  563 F.3d 948 (9th Cir. 2009) .................................................................14, 16

vi

*Sanchez v. Mohawk Indus., Inc.*
  2024 WL 4556094 (E.D. Cal. Oct. 23, 2024) ........................................................19

*Santillan v. Verizon Connect, Inc.*
  2024 WL 627998 (S.D. Cal. Feb. 13, 2024) ..........................................................19

*Scheuneman v. Arena Pharms., Inc.*
  2020 WL 3129566 (S.D. Cal. June 12, 2020) ........................................................12

*Schneider v. Chipotle Mexican Grill, Inc.*
  336 F.R.D. 588 (N.D. Cal. 2020) ....................................................................21, 22

*Silber v. Mabon*
  18 F.3d 1449 (9th Cir. 1994) ................................................................................21

*Smith v. Keurig Green Mountain, Inc.*
  2022 WL 2644105 (N.D. Cal. July 8, 2022) .........................................................22

*Spann v. J.C. Penney Corp.*
  314 F.R.D. 312 (C.D. Cal. 2016) ..........................................................................17

*Sullivan v. DB Invs., Inc.*
  667 F.3d 273 (3d Cir. 2011) ..................................................................................15

*Taylor v. Populus Grp., LLC*
  2023 WL 139898 (S.D. Cal. Jan. 9, 2023) ............................................................19

*Testone v. Barlean's Organic Oils, LLC*
  2023 WL 2375246 (S.D. Cal. Mar. 6, 2023) .........................................................19

*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016) ..............................................................................................12

*Vasquez v. Coast Valley Roofing, Inc.*
  266 F.R.D. 482 (E.D. Cal. 2010) ..........................................................................19

*Voulgaris v. Array Biophrama*
  2021 WL 6331178 (D. Colo. Dec. 3, 2021) ..........................................................13

**Statutes**

11 U.S.C. § 101-1532 .......................................................................................................4

28 U.S.C. § 1292(b) .........................................................................................................3

28 U.S.C. § 1715 .............................................................................................................7

**Other Authorities**

McLaughlin on Class Actions § 5:80 (21st ed.) ...........................................................21

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
RENEWED MOTION FOR PRELIMINARY APPROVAL

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................passim

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
RENEWED MOTION FOR PRELIMINARY APPROVAL

## NOTICE OF MOTION AND

## RENEWED MOTION FOR PRELIMINARY APPROVAL

**PLEASE TAKE NOTICE THAT** Plaintiffs,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order:

    (1)    preliminarily approving the proposed Settlement Agreement[2];

    (2)    finding that the Settlement Class is likely to be certified for settlement purposes;

    (3)    conditionally appointing Class Counsel to represent the Settlement Class;

    (4)    preliminary approving the proposed Notice Plan and Plan of Allocation;

    (5)    appointing Simpluris, Inc. as the Settlement Administrator;

    (6)    authorizing the payment of initial notice and settlement administration expenses prior to Final Approval; and

    (7)    setting a schedule for Final Approval, including for a final approval hearing.

A copy of the Proposed Order Granting Motion for Preliminary Settlement Approval is separately submitted with this Motion.

Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Second Joint Declaration of Proposed Class Counsel in Support of Preliminary Settlement Approval, the pleadings and papers on file in *In re: Silvergate Capital Corp.*, No. 23-cv-01406-RBM-BLM (the "Litigation"), the Court's May 12, 2025 Order (Doc. 69), and any other matter this Court may take notice of.

---

[1] Plaintiffs are Joewy Gonzalez, Nicole Keane, and Golam Sakline.

[2] Unless otherwise defined, capitalized terms have the meaning attributed to them in the Settlement Agreement.

**MEMORANDUM**

## I.    INTRODUCTION

This action arises out of the highly publicized November 2022 collapse of the FTX cryptocurrency exchange. FTX filed for bankruptcy shortly after the multi-billion-dollar fraud perpetrated by its principal, Sam Bankman-Fried, came to light. Plaintiffs moved on February 27, 2025, for preliminary approval of a $10 million proposed class settlement with Defendants and requested that the Court approve deferral of submission of a notice plan and plan of allocation. Doc. 66. The Court ordered further briefing on five issues on May 12, 2025. Doc. 69. Plaintiffs withdrew their motion (Doc. 70) and have since worked to finalize their Settlement proposal, and to address the issues raised in the Court's May 12 Order. Plaintiffs no longer seek to defer any aspect of the Rule 23 approval process.

In their first motion for preliminary approval, Plaintiffs recounted the inception of this case following the collapse of FTX, the discovery taken, and the negotiation process that led to the Settlement. Plaintiffs also explained why the class can be certified for settlement purposes. To avoid repetition, Plaintiffs only briefly touch on the case background and arguments set out in their first motion, which they incorporate by reference here. Instead, Plaintiffs primarily focus on their proposed plan for notice and allocation of settlement funds and respond to each issue identified by the Court in its Order for further briefing.

As detailed below, Plaintiffs propose mailed notice to over 52,000 likely class members, supplemented by a digital media campaign targeted at crypto users. They also propose a straightforward plan of allocation based on a two-part claim submission: proof of class membership, and proof of loss. As Plaintiffs no longer seek to defer notice to class members or government authorities, or to defer submission of a plan of allocation, the first and second issues on which the Court's ordered further briefing are, respectfully, mooted. In response to the third issue raised by the Court, Plaintiffs provide updated information on

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
RENEWED MOTION FOR PRELIMINARY APPROVAL

their coordination efforts with counsel in the MDL and FTX bankruptcy.[3] Responding to the fourth issue, Plaintiffs describe the characteristics of the proposed class to the extent known. Finally, in response to the fifth issue identified by the Court, Plaintiffs provide additional context and authority in support of their anticipated application for attorneys' fees and costs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Complaint and Defendants' Motion to Dismiss

The operative Consolidated Class Action Complaint ("Complaint") was filed on May 19, 2023. Doc. 14; *see also Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1086-99 (S.D. Cal. 2024) (Montenegro, J.) (detailing allegations). On June 19, 2023, Defendants moved to dismiss Plaintiffs' claims. Doc. 16. On March 20, 2024, the Court denied that motion in its entirety. *See generally Bhatia*, 725 F. Supp. 3d 1079. On April 17, 2024, Defendants filed their Answer but also filed two motions seeking either reconsideration of the Court's Order, or permission for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The motions were fully briefed and pending when the parties reached an agreement in principle, now reflected in the Settlement Agreement ("SA"). *See* Docs. 46-47, 52, 54. The Court had not yet issued a decision when Silvergate Capital Corporation filed for bankruptcy, automatically staying this case. *See* Docs. 64-65.

### B.    Discovery Efforts

The parties held informal factual exchanges and conducted document discovery before settling. Defendants produced electronic data (ESI) and 10,182 documents, exceeding 120,000 pages. Second Joint Declaration of Proposed Class Counsel in Support of Motion for Preliminary Settlement Approval ("Jt. Decl." or "Joint Declaration") ¶ 22. Class Counsel reviewed and coded Defendants' productions. *Id*. In addition, Counsel pursued public

---

[3] The "MDL" refers to *In re: FTX Cryptocurrency Exchange Collapse Litigation*, No. 1:23-md-03076 (S.D. Fla.), and the "FTX Bankruptcy" refers to *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del.). On October 8, 2024, the FTX Bankruptcy Court entered an order in the FTX Bankruptcy confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D. I. 26404] (the "Confirmed Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Plan Effective Date").

records act requests from regulators; obtained valuable information from multiple interviews with confidential FTX informants; and retained experts to analyze the Class's potential damages. *Id.* ¶ 23. Defendants also took discovery from the Plaintiffs, who provided separate responses and objections, and produced relevant documents. *Id.* ¶ 24.

### C.    Settlement Negotiations

On August 29, 2024, the parties engaged in a full-day mediation with the Honorable Layn R. Phillips (Ret.), of Phillips ADR Enterprises. *Id.* ¶ 26. The parties were unable to reach agreement during the mediation, but on September 4, 2024, the parties ultimately accepted the mediator's proposal to settle the matter for $10 million. *Id.* The Settlement Agreement now before the Court documents the agreement reached in mediation. *See id.*, Ex. 1 ("SA").

### D.    Terms of the Settlement

The Settlement Class is "[a]ll persons or entities who, between April 1, 2019, and November 11, 2022, sent or deposited fiat currency into an FTX- or Alameda-related account at Silvergate Bank and who, on November 11, 2022, still had an account on FTX.com or FTX.US that contained cryptocurrency, fiat currency, or both." SA ¶ 1.23.[4] It provides that, in exchange for a "full and final release, settlement, and discharge of all Settlement Class Released Claims," Defendants will pay $10 million. *Id.* ¶¶ 1.10, 1.11, 1.27, 2.1, 3.2, 6.4, 9.3. All settlement-related expenses, including fees and costs payable to Class Counsel, will be deducted from the non-reversionary settlement fund.

### E.    Bankruptcy Proceedings

On September 17, 2024, Silvergate filed a voluntary petition for relief under 11 U.S.C. § 101-1532. *See In re: Silvergate Capital Corporation et al.*, No. 24-12158 (KBO) (Bankr. D. Del.) (the "Silvergate Bankruptcy"). The Silvergate Bankruptcy automatically stayed this action under 11 U.S.C. § 362(a)(1). (*See* Docs. 64-65.) On February 25, 2025, the bankruptcy

---

[4] The Settlement Class is almost identical to the class alleged in the Complaint, adding only the words "persons or entities" for clarity. (Doc. 14, ¶ 206.)

court lifted the automatic stay under Section 362(a)(1) to permit the approval process to proceed in this Court. Doc. 67.

## III. INFORMATION RELEVANT TO COURT'S BRIEFING ORDER[5]

### A. Issues No. 1 and 2: Notice Plan, Plan of Allocation, and CAFA Notice

The Court ordered the parties to further support their requests to defer class and CAFA notice and submission of an allocation plan. Plaintiffs no longer propose to defer submission of these proposals.

***Notice Plan:*** There is no definitive class list, but Silvergate's records include a spreadsheet (the "Transaction List") containing incoming wire information and associated names and street addresses for 271,953 transactions, identifying over 52,000 individuals, including named Plaintiffs Nicole Keane and Golam Sakline. Jt. Decl., ¶ 36. The parties believe the Transaction List is the best available source of class member contact information. These individuals will receive postcard notice by first class US mail. *See* Declaration of Julie Meichsner of Simpluris, Inc. In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Meichsner Decl.") ¶ 9. The Short Form (postcard) Notice and Settlement Administrator's press release provide essential information and direct class members to the settlement website, where they can review the Long Form Notice and other information. *See* Meichsner Decl. ¶¶ 9, 31. The parties propose to supplement mailed notice with a digital notice campaign targeted to reach crypto investors, and thus likely former FTX customers. *Id.* ¶¶ 17-32. Digital notice will be disseminated through targeted advertisements on various platforms, including social media platforms like Facebook, X, and Reddit, and targeted banner ads will be displayed on Google platforms. *Id.* The digital notice campaign alone is expected to reach over 80% of class members. *Id.* ¶ 43; *see, supra*, Section V.C.1.

***Plan of Allocation:*** To submit a claim, a claimant must fill out the Claim Form, attached as Ex. 7 to the Joint Declaration. Claimants who appear on the Transaction List will

---

[5] Plaintiffs address the Court's questions regarding the reasonableness of the proposed attorneys' fee award below in section V.B.3.d.

only need to submit evidence of their Claim Amount, defined in the Plan of Allocation as their claim as a creditor in the FTX Bankruptcy under the terms of the Confirmed Plan. *See id.* at 3. If the claimant does not appear on the Transaction List, the claimant will also be required to prove they sent or deposited money into an FTX- or Alameda-related account at Silvergate Bank. *See id.* Claim Amounts were determined in the FTX Bankruptcy from FTX's records. Jt. Decl. ¶ 38. Customers were notified of their Claim Amount in the FTX Bankruptcy and given the opportunity to contest FTX's determination, making the Claim Amount the best measure of a given Settlement Class Member's loss.[6] *Id.* The Claim Form will require a simple attestation that the information submitted is true and correct. Each Class Member will be limited to a single claim.

The Settlement Administrator[7] will calculate the *pro rata* distribution for each approved claimant by multiplying the total value of the Net Settlement Fund by a fraction, for which (a) the numerator is the Claim Amount for that claimant, and (b) the denominator is the sum of all Claim Amounts for all claimants. *Id.*, Ex. 5, ¶ 9. For administrative efficiency, each claimant will receive a minimum payment of $5.00, and payments to claimants who would otherwise receive less than $5.00 on a *pro rata* basis will be increased to $5.00. *Id.* ¶ 16. The amounts paid to claimants who would otherwise receive more than $5.00 will be reduced on a *pro rata* basis until all claimants receive the minimum $5.00 payment. *Id.*

If any distributable balance remains in the net settlement fund by reason of uncashed payments or otherwise three months after the distribution of the net settlement fund, then that balance will be redistributed on a *pro rata* basis among those claimants who have collected their payments and would receive at least $5.00 from the redistribution, after payment of any additional costs or fees incurred for the redistribution. Jt. Decl., Ex. 5, ¶ 20.

---

[6] Settlement Class Members are hereafter referred to as "Class Members."

[7] The Settlement Administrator's qualifications are described in the accompanying Meichsner Decl., ¶ 4.

The $5.00 minimum payment requirement applicable to the initial distribution will not apply to redistributions. *Id.*

If Class Counsel determines that a redistribution would be impracticable, Class Counsel will petition the Court for authorization to distribute the residual fund to a charitable recipient. *Id.* ¶ 21. Any motion seeking approval of an order for disposition of the residual will detail the means of selection of the proposed recipient(s) and submit the issue for approval by the Court. *Id.*

The determination of the validity of Claim Forms and the proper amount of the payment to a Class Member is the sole responsibility of the Settlement Administrator. *Id.* ¶ 19. The parties will have no role in, nor will they be held liable in the determination of monetary relief to be accorded to any Class Member. *Id.*

**CAFA Notice:** The Settlement Administrator will provide notice to the required government officials, consistent with 28 U.S.C. § 1715. Jt. Decl. ¶ 42.

**B.      Issue No. 3: Coordination With The MDL and the FTX Bankruptcy**

The Court directed the parties to address coordination efforts with the related cases and the impact the pending settlements in those cases may have on the settlement here.

**_The MDL:_** Class Counsel have consulted on several occasions with MDL counsel. *Id.* ¶ 31. There have been two partial settlements preliminarily approved in the MDL. The first with a series of "insiders and promoters" for $1.35 million in March 2024 (MDL, Doc. 799), the second with former basketball legend Shaquille O'Neal for $1.8M approved in May 2024. *Id.*, Doc. 937. The preliminary approval order in both cases approves the deferral of notice. Plaintiffs in the MDL have entered into an agreement with FTX whereby they agree to cooperate in the prosecution of claims and to defer until a later point a negotiation over the distribution of recoveries, and specifically, what percentage of those recoveries will go to creditors generally and what percentage will be paid to former customers. FTX Bankruptcy, Doc. 25683.

Plaintiffs understand that the distribution of recoveries as between FTX customers and FTX creditors will be determined based on the respective contentions of the MDL Plaintiffs

and FTX concerning the nature of the particular claims and whether the claims are those of customers in their individual capacities or derivative claims of FTX or one of its affiliates. Jt. Decl. ¶ 31. The MDL Plaintiffs continue to pursue claims against other defendants and intend to await further developments before distributing money. *Id.* ¶ 32.

The release of claims in this action does not impact the MDL and vice-versa. Plaintiffs' class definition here is also distinct from the class definition in the MDL in that the class in this matter is limited to individuals who sent or deposited funds with Silvergate and had a positive account balance when FTX filed for bankruptcy. The MDL class is defined more broadly to include all FTX customers without reference to Silvergate.[8]

***The FTX Bankruptcy****: Plaintiffs conferred with counsel for FTX concerning an agreement to coordinate notice and distribution. Jt. Decl. ¶ 33. FTX declined to cooperate in making creditor data and contact information available for the purpose of distributing funds to the discrete subset of FTX creditors who make up the Settlement Class. *Id.* ¶ 34. Plaintiffs believe the Transaction List offers more targeted means of giving notice to Class Members, and because Class Members received distributions from the FTX Bankruptcy in the past year, the information they need to establish their Claim Amount is readily available. Submitting that evidence imposes a modest burden on claimants and allows the settlement to move forward expeditiously and independently of the FTX Bankruptcy.

## C.    Issue No. 4: Class Size and Composition

The Court requested information about the estimated size of the proposed class, any differences among class members' claims, and any exclusions to the Settlement Class. The Transaction List indicates that at least 52,000 individuals and entities wired money to Silvergate during the class period and a high proportion of these individuals are Class

---

[8] The MDL Class is defined as: "All persons or entities who . . . within the applicable limitations period, purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT." MDL, Doc. 182.

Members. Plaintiffs believe there are no material differences among Class Members for purposes of their claims against Defendants.

FTX's bankruptcy administrator estimated the value of customer claims at over $11.4 billion, FTX Bankruptcy, ECF 1101-1 at 6, but recoveries in the FTX bankruptcy already exceed $14 billion. *See FTX Files Consensus-Based Plan of Reorganization* PR NEWSWIRE, https://www.prnewswire.com/news-releases/ftx-files-consensus-based-plan-of-reorganization-302138948.html ("FTX Press Release"). FTX made investments in cryptocurrencies that increased exponentially in value after FTX's insolvency in November 2022. Bitcoin, for example, increased 547% in value from December 1, 2022, through July 3, 2025. *See Yahoo Finance*, https://finance.yahoo.com/quote/BTC-USD/history/ (historical pricing data). In consequence, FTX's crypto assets also increased in value, and **most FTX customers, including most Class Members—are expected to eventually recover all of their out-of-pocket losses.** *See* FTX Press Release. FTX Bankruptcy, Doc. 1101-1 at 6. FTX states that 98% of its former customers had claims for less than $50,000. *See* FTX Press Release.

The class in this case is a subclass of all FTX customers, limited to those whose payments to FTX were sent or deposited into one of the FTX-affiliated accounts at Silvergate Bank. Other FTX customers' money entered FTX through banks other than Silvergate, such as Signature Bank and Deltec Bank, along with other non-bank channels. Many FTX customers delivered crypto assets directly to FTX. Those individuals are also included among FTX's customer creditors but are not members of the Settlement Class here.

For avoidance of conflicts, the Settlement Class definition excludes Defendants, Silvergate insiders and their related parties, Class Counsel, and judicial officers and staff assigned to this case and their immediate family members. *See* SA ¶ 1.23. There are no other exclusions from the Settlement Class.

## IV.    LEGAL STANDARD

"A court may approve a class action settlement of a class only 'after a hearing and on finding that it is fair, reasonable, and adequate,' and that it meets the requirements for class

9

certification." *In re Regulus Therapeutics Inc. Sec. Litig.* ("*Regulus*"), 2020 WL 6381898, at *2 (S.D. Cal. Oct. 30, 2020) (quoting Fed. R. Civ. P. 23(e)(2)).

## V.    ARGUMENT

### A.    The Court Will Likely Be Able Certify the Class

At the preliminary approval stage, "if a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, advisory committee notes (2018 amendment). In light of the additional information Plaintiffs have provided and the notice and allocation proposals, the requirements for preliminary approval are met.

#### 1.    The Requirements of Rule 23(a) are Satisfied

##### a.    Numerosity

A class action satisfies the numerosity requirement if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quotation omitted). Although the exact number of Class Members is presently unknown, based on the Transaction List, it likely exceeds 50,000. *See also* FTX Bankruptcy, Doc. 30631 at 3 (as of June 4, 2025, "approximately 97,400 customer proofs of claim have been filed against the Debtors and the FTX Recovery Trust"). Numerosity is therefore easily met. *See Mandalevy v. Bofi Holding Inc.*, 2022 WL 4474263, at *4 (S.D. Cal. Sept. 26, 2022) (numerosity generally requires at least 40 class members).

##### b.    Commonality

"Rule 23(a)(2) commonality requires 'questions of fact or law common to the class,' though all questions of fact and law need not be in common." *Regulus*, 2020 WL 6381898, at *3 (quoting *Hanlon*, 150 F.3d at 1026). The "burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon*, 150 F.3d at 1020). Whether Defendants knew of and substantially assisted the fraud, breaches of fiduciary duty, and conversion of customer assets are issues common to the class, satisfying the requirement. *See Newton v. Am. Debt Servs., Inc.*, 2015 WL 3614197, at *7 (N.D. Cal. June 9, 2015).

### c.  Typicality

"Rule 23(a)(3) requires that the plaintiff show that 'the claims of the representative parties are typical of the claims or defenses of the class.'" *Regulus*, 2020 WL 6381898, at *3 (quoting Fed. R. Civ. P. 23(a)(3)). Like commonality, the typicality requirement is interpreted "permissive[ly]," and "requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). Plaintiffs' claims are typical of the claims of the other Class Members, all of whom sent or deposited fiat currency into an FTX- or Alameda-related account at Silvergate Bank, had FTX accounts with positive balances when FTX filed for bankruptcy, and were unable to recover their funds. Because Plaintiffs' injury—the loss of their investment—arises from the same course of conduct that injured other Class Members—Silvergate's aiding and abetting FTX—their claims rely on the same theories and evidence, satisfying typicality. *See Regulus*, 2020 WL 6381898, at *3.

### d.  Adequacy

"Under Rule 23(a)(4), representative parties must be able to 'fairly and adequately protect the interest of the class.'" *Mandalevy*, 2022 WL 4474263, at *5 (quoting Fed. R. Civ. P. 23(a)(4)). Both Plaintiffs and Counsel are adequate. Plaintiffs do not have any conflicts with Class Members and have helped advance the case. Jt. Decl., Exs. 2-4 (Keane Decl. ¶ 4; Gonzalez Decl. ¶ 4; Sakline Decl. ¶4). *See Mergens v. Sloan Valve Co.*, 2017 WL 9486153, at *6-7 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where plaintiff had no interests antagonistic to the class); *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (plaintiffs were adequate when they "have been active participants in the litigation"). Proposed Class Counsel, Girard Sharp, LLP (GS), Blood Hurst & O'Reardon, LLP (BHO), Fitzgerald Monroe Flynn PC (FMF), and Levine Kellogg Lehman Schneider + Grossman LLP (LKLSG), are experienced in complex litigation and have devoted significant time and resources to litigating on behalf of the class. *See* Jt. Decl. ¶¶ 13-27, 46, 60. Plaintiffs and Counsel thus satisfy Rule 23(a)'s adequacy requirement.

### 2.    The Requirements of Rule 23(b)(3) are Satisfied

#### a.    Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Moreover, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *Id.* at 558; *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005-1006 (9th Cir. 2020). The core facts and legal issues identified for purposes of commonality dominate. Predominance is thus satisfied.

#### b.    Superiority

Rule 23(b)(3) requires that a class action be superior to other methods for the fair and efficient adjudication of the controversy. This "inquiry 'requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case.'" *Scheuneman v. Arena Pharms., Inc.*, 2020 WL 3129566, at *3 (S.D. Cal. June 12, 2020) (quoting *Hanlon*, 150 F.3d at 1023). The factors set forth under Rule 23(b)(4) all weigh in favor of finding a class action is the best method to fairly and efficiently adjudicate Class Members' claims against Silvergate. First and second, Class Members' potential damages are dwarfed by litigation costs that have so far included substantial document storage and review costs, and engagement of expert witnesses. Because of the "substantial disparity between litigation costs and what plaintiffs hope to recover…[i]t is unlikely that individual claims would ever be pursued." *In re Ariz. Theranos, Inc. Litig.*, 2020 WL 5435299, at *9 (D. Ariz. Mar. 6, 2020). Concentration of the litigation in the Southern District of California is also desirable, as Defendants all reside here. *See id*. Finally, because this is a settlement, there are no manageability issues that defeat superiority. *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (*en banc*).

### B.    The Court Should Grant Preliminary Approval of the Proposed Settlement

In determining whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) directs the Court to consider whether "the class representatives and class counsel have

12

adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate"; and "the proposal treats class members equitably relative to each other." *Martinez v. Univ. of San Diego*, 2024 WL 4713891, at *10-1 (S.D. Cal. Nov. 7, 2024) (citing Fed. R. Civ. P. 23(e)(2)). These factors all favor settlement approval.

### 1. The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel adequately represented the class and whether the settlement proposal was negotiated at arm's length. To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

The Settlement is the product of serious, informed, non-collusive negotiations between the parties, after substantial litigation, including an Order on Defendants' motion to dismiss; a fully-briefed motion for reconsideration or interlocutory appeal of that Order; discovery efforts involving the production and review of thousands of pages of internal documents; extensive investigation by Class Counsel; and an adversarial mediation process before a highly-qualified mediator. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122, 1127 (9th Cir. 2020) (case being "nearly [at] the close of discovery" indicated "the settlement's substantive fairness"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (arm's-length negotiations typically take place over an extended period with experienced counsel on both sides, each with an understanding of the strengths and weaknesses of their own and the opposing party's claims). Indeed, the Settlement was negotiated with the assistance of Judge Layn Phillips, "a nationally recognized mediator of complex cases and class actions." *Voulgaris v. Array Biophrama*, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021). Through the mediation process, at the time the Settlement was reached, Class Counsel was sufficiently informed to assess its fairness. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015). In addition, the all-cash nature of the Settlement, especially in the face of significant risks the class faced,

demonstrates it was achieved through vigorous litigation, rather than collusion, since "cash . . . is a good indicator of a beneficial settlement," *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and a sign that Class Counsel did not subvert the class's interests to Defendants' interests "in exchange for red-carpet treatment on fees[.]"*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011) (quotation omitted).

Finally, the Ninth Circuit has "held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *W. Pub'g*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Class Counsel have considerable experience prosecuting class actions, particularly those involving financial frauds; they understand the potential upside and risks attendant to this case; and strongly endorse the Settlement. *See* Jt. Decl. ¶¶ 59-62.This factor therefore weighs in favor of finding the Settlement fair.

## 2. The Settlement Treats All Class Members Equitably

Whether a settlement treats class members equitably turns on whether there is any disparity among what class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015); *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *8 (S.D. Cal. June 8, 2022) (allocation plan should treat similarly situated class members similarly). The Settlement treats all Class Members equitably.

While FTX customers may have had different trading objectives or dealt in different cryptocurrency instruments, the common element uniting Class Members is that each sent or deposited funds with Silvergate Bank and their loss of access to their money when FTX filed for bankruptcy. This common element means all share an interest in maximizing their recovery from Silvergate, and the allocation plan that treats all Class Members equally by prorating the recovery according to relative loss is the simplest and most equitable way to distribute the recovery among them. The claims procedure here will require only that most Class Members submit evidence of their Claim Amount, as determined in the FTX

14

Bankruptcy, and their creditor number, information that they received in the past year. Even if a Class Member does not appear on the Transaction List and must submit evidence that they sent or deposited funds to a Silvergate FTX or Alameda-related account, the claim procedure remains substantially less burdensome than the customary multipage proof of claim required in a securities case. S*ee, e.g., Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-540 JLS (KSC), 2021 WL 1579251, at *9 (S.D. Cal. Apr. 22, 2021) (approving four-page claim form)

"Approval of a plan of allocation of settlement proceeds in a class action under [Rule] 23 is governed by the same standards of review applicable to approval of settlement as a whole: the plan must be fair, reasonable and adequate." *Id.* at *7. The Plan of Allocation provides for an effective and equitable method for distributing benefits to the Settlement Class. Class Members who participate will receive a *pro rata* share of the net settlement fund. *See supra* Section III.A; *see also In re BofI*, 2022 WL 2068424, at *9 (approving allocation plan providing for pro rata distribution). The minimum payment of $5.00 for each valid ensures that all eligible Class Members "will receive a guaranteed measure of recovery." *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *5 (N.D. Cal. Mar. 28, 2019); *see also Amigon v. Safeway Constr. Enters., LLC,* 2024 WL 5040436, at *5 (E.D.N.Y. Dec. 9, 2024) (a plan of allocation "need not be perfect[,]" and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (citation omitted); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (plan of allocation applied uniformly to the class avoids obstacles associated with the "[b]alkanization of the class action").

### 3.    The Relief Provided to the Class is Adequate.

In determining whether the relief provided to Class Members is adequate, Rule 23 directs courts to consider the following factors: (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class"; (3) the terms of any proposed award of attorney's fees"; and (4) "any agreement required to

be identified under Rule 23(e)(3)." *See Martinez*, 2024 WL 4713891 at \*10 (citing Fed. R. Civ. P. 23(e)(2)).

### a.    The Strengths of Plaintiffs' Case and Risk, Expense, Complexity, and Duration of Further Litigation

The Ninth Circuit recognizes that "a settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992). Defendants are essentially judgment proof: FTX was Silvergate Bank's largest customer, and its collapse signaled the end of Silvergate Bank as well. At the time the Settlement was reached, there was a risk Silvergate would file for bankruptcy, which proved to be the case. Silvergate also faces a securities class action, derivative action, and numerous regulatory investigations, all of which have consumed Defendants' remaining insurance coverage. Defendant Lane does not represent a significant source of recovery, since (1) Lane has made colorable arguments as to why liability as alleged in the Complaint should not attach to him, and (2) his insurance coverage will also be depleted and he lacks sufficient personal wealth to satisfy a judgment commensurate with the scale of this litigation. Defendants' relative lack of resources creates additional risks for the class. *See Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588, at \*4 (W.D. Wash. Feb. 3, 2016). Given these uncertainties balanced against the proposed Settlement, these factors favor preliminary approval. *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at \*5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.").

### b.    The Risk of Maintaining Class Status Through Trial

Assuming the class was certified, Plaintiffs also faced risks sustaining class certification through trial. First, Defendants would almost certainly seek a Rule 23(f) appeal, and a "district court may decertify a class at any time." *W. Pub'g*, 563 F.3d at 966 (citation omitted). Decertification happens with some regularity, including in this district. *See NEI*

16

*Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, 2016 WL 2610107, at *5-8 (S.D. Cal. May 6, 2016), *aff'd*, 926 F.3d 528 (9th Cir. 2019). This was particularly a real risk with respect to Plaintiffs' aiding and abetting fraud claim, which Defendants would likely argue implicated individual questions of reliance in establishing the underlying tort.

### c.    The Amount Offered in Settlement

In light of the substantial risks of obtaining any recovery at all through continued litigation, and considering also that Class Members are expected to eventually recover all of their out-of-pocket losses through the FTX bankruptcy, the settlement amount is fair, reasonable and adequate. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case.").

### d.    The Terms of Any Proposed Award of Attorney's Fees and Service Awards.

In its May 12 Order, the Court directed Plaintiffs "to provide more information or argument regarding the reasonableness of their proposed fee award." Doc. 69 at 3 & n.2. Class Counsel expects to apply for up to a third of the Settlement Fund ($3.3 million). Defendants have agreed not to lodge any objection to Class Counsel's request for attorneys' fees up to this amount. SA ¶ 9.2. Class Counsel will also apply for reimbursement of litigation costs not to exceed $150,000, together with service awards for the Class Representatives of up to $10,000 each. Jt. Decl. ¶ 46. Plaintiffs will submit additional evidence in support of the foregoing with their motion for final approval, but offer the following additional information and argument in response to the Court's Order.

In the Ninth Circuit, the "dominant" method for evaluating fees in common fund cases is the percentage-of-the-fund method as it ensures the fee is proportionate to the recovery. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *Elkies v. Johnson & Johnson Servs., Inc.*, 2020 WL 10055593, at *8 (C.D. Cal. June 22, 2020) ("In the Ninth Circuit, use of the percentage method in common fund cases appears to be dominant."). Although courts in the Ninth Circuit often treat a 25% award as a starting point, Class Counsel

17

will argue that an upward adjustment is warranted because of the time and resources devoted to this litigation, its complexity and risk, and the results achieved.

Class Counsel's total lodestar, through July 1, 2025, is over $2.9 million using current rates. Jt. Decl. ¶ 46. There will be no windfall. Class Counsel came to this case independently and agreed to coordinate their efforts. Counsel began investigating Silvergate Bank soon after FTX's collapse and reviewed and compiled a vast amount of publicly available information before filing the operative Complaint against Defendants. *Id.* ¶ 48; Doc. 14. Counsel opposed Defendants' motion to dismiss, which the Court ultimately denied in its entirety. *See Bhatia*, 25 F. Supp. 3d at 1079.

Class Counsel also completed significant discovery. On November 16, 2023—before the Court's Order and the parties' Rule 26 conference—Plaintiffs delivered Rule 34 requests to each Defendant under Rule 26(d)(2) and conferred with Defendants to discuss preservation in light of Silvergate's precarious condition, to identify sources of relevant custodial and non-custodial data, and begin negotiating search terms, custodians, and a relevant time period. Jt. Decl. ¶ 49.

Class Counsel created a dedicated document database to review the 120,000 page production and analyzed and coded Defendants' productions. *Id.* ¶ 50. In addition, Counsel pursued public records requests from regulators; obtained valuable information from multiple interviews with confidential FTX informants; and consulted experts to analyze potential damages. *Id.* Class Counsel prepared an effective mediation presentation, and leveraged many years of experience to negotiate a settlement in the face of Silvergate's impending bankruptcy and the threat of no recovery. *Id.* ¶ 51. After Silvergate's bankruptcy, Counsel retained and advanced payment to Delaware bankruptcy counsel to appear in the Silvergate Bankruptcy and monitor proceedings. *Id.* ¶ 52. Once the Settlement was reached, Counsel have navigated the complex web of litigation surrounding the FTX collapse, including both the Silvergate and sprawling FTX bankruptcy proceedings, to document the Settlement and devise a fair and reasonable allocation plan.

The anticipated fee falls within the range commonly awarded by courts. *See, e.g.*, *Testone v. Barlean's Organic Oils, LLC,* 2023 WL 2375246, at *7 (S.D. Cal. Mar. 6, 2023) (Bermudez Montenegro, J.) (approving one-third award and noting that "in most common fund cases, the award exceeds that [25%] benchmark") (citing *Hunter v. Nature's Way Prod.*, LCC, 2020 WL 71160, at *4 (S.D. Cal. Jan. 6, 2020)); *Lopez v. Velocity Transp. LLC*, 2024 WL 4957565, at *8 (S.D. Cal. Dec. 3, 2024) (same); *McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *8 (S.D. Cal. Apr. 8, 2022) (same); *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *14 (S.D. Cal. Sept. 28, 2017) (same); *see also In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting typical fee award range is between "20% to 33 1/3%" of the settlement fund).

Defendants' agreement not to challenge a fee request up to $3.3 million passes muster under *In re Bluetooth*, 654 F.3d at 935. This case was actively litigated, the requested fee award is not disproportionate to the recovery of the class, any funds that remain after fees and expenses are awarded will not revert to Defendants, and the Settlement was reached with the help of an experienced mediator. *See Taylor v. Populus Grp., LLC*, 2023 WL 139898, at *3-4 (S.D. Cal. Jan. 9, 2023) (noting presence of "clear sailing provision" but concluding the fee request was reasonable); *Fitzgerald v. Pollard*, 2024 WL 3262631, at *8 (S.D. Cal. July 1, 2024) ("Here, there is no evidence before the court that demonstrates that the class would have received more meaningful relief if Defendants had simply been permitted to oppose Class Counsel's fee application."); *Sanchez v. Mohawk Indus., Inc.*, 2024 WL 4556094, at *16 (E.D. Cal. Oct. 23, 2024) (noting presence of "clear sailing" agreement but finding no collusion where fund was "non-reversionary"); *Santillan v. Verizon Connect, Inc.*, 2024 WL 627998, at *8 (S.D. Cal. Feb. 13, 2024) (no evidence of collusion in part because the settlement was negotiated with the help of "a respected mediator" after years of litigation).

Finally, the $10,000 service awards for each of the three Plaintiffs also fall within the range of reason. Jt. Decl. ¶ 45. Each Plaintiff devoted substantial time to this case, including in preserving documents and electronic records, reviewing pleadings, communicating with

19

Class Counsel about case developments, responding to written discovery requests, and gathering and producing documents. Plaintiffs collectively produced over 250 documents responsive to Defendants' discovery requests. *Id.* ¶ 24. Plaintiff Gonzalez and Keane also attended the parties' May 22, 2024 Case Management Conference.[9] *Id.* ¶ 55. These activities will be documented in connection with the fee application. *See Lopez*, 2024 WL 4957565, at *15 (approving $10,000 service award in $600,000 settlement); *Alvarez v. Farmers Ins. Exch.,* 2017 WL 2214585, at *1-2 (N.D. Cal. Jan. 18, 2017) (approving $10,000 service award in $4.9 million settlement); *McDonald v. CP OpCo, LLC*, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019) (similar). Whether these awards will be granted in whole or in part is reserved to the Court's discretion.

### e.    No Separate Agreements Weigh Against Preliminary Approval

Rule 23(e)(3) requires the parties to "identify[] any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). The only separate agreement between the parties relates to the threshold amount of opt-outs necessary to trigger Defendants' right to terminate the Settlement. *See* Jt. Decl. ¶ 30. Such agreements are routinely kept confidential because they do not "alter what relief the class members receive[.]" *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7 (S.D. Cal. Oct. 13, 2022).

### C.    The Notice Plan Should Be Approved

### 1.    The Notice Plan Provides the Best Practicable Notice

The Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually

---

[9] Magistrate Judge Major excused Mr. Sakline from attending, owing to an eleven-hour time difference. Doc 48.

receive notice." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (citing *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)); *Coppel v. SeaWorld Parks & Ent., Inc.*, 2025 WL 1346873, at *7 (S.D. Cal. May 8, 2025) (same).

Notice here comports with Rule 23 and the mandates of due process. Using plain language, the proposed notice provides all the information required under Rule 23(c)(2)(B). Plaintiffs have submitted with this motion a proposed notice, post card notice, press release, and digital notices. For clarity and to minimize legalese, they are modeled on the Impact Fund Notice Project's well-accepted notice templates. *See Martinez*, 2024 WL 4713891 at *12 (approving notice plan that explained basics of the settlement "in plain English"). The Impact Fund format has been approved by California federal courts. *See, e.g., In re Juul Labs, Inc., Mktg. Sales Prac., & Products Liab. Litig.*, Case No. 3:19-md-02913 (N.D. Cal), Docs. 3381, 3391; *Stark, et al. v. Patreon, Inc.*, Case No. 3:22-cv-03131 (N.D. Cal.), Docs. 191-92; *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, Case No. 3:20-cv-03131 (N.D. Cal.), Docs. 613, 614.

The proposed notice program calls for the Settlement Administrator to mail the Short-Form Notice via postcard to the Class Members with available addresses. Meichsner Decl. ¶ 9. "First-class mail directed to last-known addresses of class members is generally considered to be the 'best notice practicable' to ensure that proper notice is received by potential class members.'" McLaughlin on Class Actions § 5:80 (21st ed.) (citing, *inter alia*, *Rannis v. Recchia*, 380 Fed. App'x. 646, 650 (9th Cir. 2010); *In re Charles Schwab Corp. Sec. Litig.*, 2010 WL 1445451, *2 (N.D. Cal. 2010)); *see, e.g., Boyd v. May Trucking Co.,* 2019 WL 12763009, at *11 (C.D. Cal. July 1, 2019) (approving notice plan utilizing only direct mail); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 5394016, at *4 (N.D. Cal. Sept. 27, 2016) (same); *Nelson v. Avon Prods., Inc.*, 2017 WL 733145, at *3 (N.D. Cal. Feb. 24, 2017) (same).

Mailed notice will be supplemented by a robust digital notice campaign. Meichsner Decl. ¶¶ 17-32. Together, these constitute the best practicable notice under the circumstances. The Transaction List is the best available source of targeted contact information for Class

Members, and digital notice on platforms such as Facebook, X, Reddit, and Google is independently expected to reach 80% of Class Members.  *See* Meichsner Decl. ¶ 43.

A notice plan that reaches "70-95%" of class members is one that reaches a "high percentage." Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, Federal Judicial Center (2010). The Notice Plan is sufficient for purposes of due process because the supplemental digital notice program alone will likely reach over 80% of class members. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (approving notice program that reached 85% of class members); *Rael v. Children's Place, Inc.*, 2020 WL 434482, at *13 (S.D. Cal. Jan. 28, 2020) (granting approval of notice plan designed to reach 70% of the class); *In re Google Location History Litig.*, No. 5:18-CV-05062-EJD, 2024 WL 1975462, at *3 (N.D. Cal. May 3, 2024) (approving notice campaign that reached an "estimated 80% of the Settlement Class"); *Schneider*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (approving notice program that "was likely viewed by approximately 72.64% of the Settlement Class); *Elkies v. Johnson & Johnson Servs., Inc.*, 2020 WL 1005559, at *2 (C.D. Cal. June 22, 2020) (approving notice plan estimated to reach over 70% of settlement class members); *Smith v. Keurig Green Mountain, Inc.*, 2022 WL 2644105, at *11 (N.D. Cal. July 8, 2022) (similar).

## 2.    Objections and Opt Outs

The proposed Preliminary Approval Order sets a deadline for objections and opt outs. Opt-out notices can either be submitted online or in writing. Jt. Decl. Ex. 8 ("Long Form Notice"). Opt-out notices submitted in writing must also be submitted with a statement attesting that the individual meets the requirements for membership in the Settlement Class, and include the individual's first and last name, address, telephone number, and signature. Long Form Notice at 11. The information required in the opt-out notice is necessary to ensure the opt-out is submitted by a Member of the Class and to properly identify the Class Member who is opting out.

Objections must be submitted in writing and must comply with the requirements outlined in the Long Form Notice. *Id.* at 12.  The Preliminary Approval Order requires that

22

objectors also include evidence of class membership. *See In re Hydroxycut Mktg. and Sales Practices Litig.*, 2013 WL 5275618, at *2 (S.D. Cal. Sep. 17, 2013) (only class members have standing to object and objectors have the burden of establishing standing). While objections have their place in the process, the requirement that objectors establish class membership ensures only legitimate stakeholders participate in the approval process. *See id.*

The parties must respond to objections no later than five days after the Objection or Opt-out Deadline. Jt. Decl., ¶ 39. Within two days of the Objection or Opt-out Deadline, Simpluris will provide proposed Class Counsel and Defendant's Counsel with the number of persons who have timely and validly excluded themselves from the Settlement. *Id.* Plaintiffs and Class Counsel will file motions for the payment of attorneys' fees and expenses sufficiently in advance of the opt-out and objection deadline to give Class Members the opportunity to review and comment. *See id.* ¶ 46.

### D. Appointment of the Settlement Administrator

The Settlement Agreement will be administered by an established, independent claims administrator, Simpluris, Inc. Class Counsel selected Simpluris to administer notice to the Settlement Class and the claims process based on its track record and competitive pricing. Jt. Decl. ¶ 41. Simpluris is experienced in notice and claims administration, as evidenced by the accompanying the Declaration of Julie Meichsner, filed herewith. Simpluris's proposal and charges for various categories of services is attached to Counsel's joint declaration. *Id.*, Ex. 6. In addition to managing the notice program and receiving and processing claims and opt-outs, Simpluris will maintain a dedicated settlement website containing links to the Long Form Notice, Claim Form, and all other relevant settlement documents. Meichsner Decl. ¶ 31. These expenses (aside from initial expenses advanced pursuant to the Notice Plan) will be submitted for Court approval before they are be paid from the Settlement Fund. Jt. Decl. ¶ 57.

### E. The Court Should Approve the Payment of Initial Expenses Prior to Final Approval

Simpluris estimates overall administrative expense for the Settlement at $300,219. Jt.

23

Decl. ¶ 44. To give notice and establish a website, the parties seek approval of an advance of $229,000 from the Settlement Fund.  Jt. Decl. ¶; *In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 228823, at *7 (S.D. Cal. Jan. 26, 2022) (approving $1 million advance for media costs). Of the advance, $219,000, or 73%, will be devoted to notice expense.  Jt. Decl. ¶ 56. These costs are reasonable and necessary to implement the Settlement. *See id.*

### F.  The Court Should Set A Final Approval Schedule

The last step in the settlement approval process is the final approval hearing at which Plaintiffs will seek final approval of the proposed Settlement Agreement. In addition, any objections to or arguments in support of final approval of the Settlement Agreement from absent Class Members may be heard at the final approval hearing. Plaintiffs request the Court issue a final approval schedule leading up to this hearing, establishing dates for, amongst others, commencement and conclusion of notice, claims, exclusion requests, and objections deadlines, final approval briefing, and the final approval hearing, as set forth in the proposed Preliminary Approval Order filed herewith.

## VI.  CONCLUSION

Plaintiffs respectfully request the Court enter the proposed preliminary approval order submitted with this motion.

Dated: July 18, 2025

Respectfully Submitted,

/s/ *Daniel C. Girard*

DANIEL C. GIRARD
*dgirard@girardsharp.com*
JORDAN ISERN
*jisern@girardsharp.com*
SAMHITA COLLUR
*scollur@girardsharp.com.*
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800

24

TIMOTHY G. BLOOD
*tblood@bholaw.com*
THOMAS J. O'REARDON
*toreardon@bholaw.com*
JAMES M. DAVIS
*jdavis@bholaw.com*
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA 92101
Phone: (619) 338-1100

JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
PETER GRAZUL
*pgrazul@fmfpc.com*
**FITZGERALD MONROE FLYNN PC**
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

JASON KELLOGG
*jk@lklsg.com*
VICTORIA J. WILSON
*vjw@lklsg.com*
MARCELO DIAZ-CORTES
*md@lklsg.com*
**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
100 Southeast Second Ave., 36th Floor
Miami, Florida 33131
Telephone: (305) 403-8788

***Counsel for Plaintiffs***

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
RENEWED MOTION FOR PRELIMINARY APPROVAL

1

### ECF CERTIFICATION

2

The filing attorney attests that he has obtained concurrence regarding the filing of

3

this document from the signatories to this document.

4

5
Dated: July 18, 2025                          **GIRARD SHARP LLP**

6

7
                                       By:  /s/ *Daniel C. Girard*

8
                                              Daniel C. Girard

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
RENEWED MOTION FOR PRELIMINARY APPROVAL