**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

**GIRARD SHARP LLP**
DANIEL C. GIRARD
JORDAN ISERN
SAMHITA COLLUR
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
jisern@girardsharp.com
scollur@girardsharp.com

*Class Counsel*

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
MELANIE R. MONROE (SBN 275423)
TREVOR M. FLYNN (SBN 253362)
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Tel: 619/215-1741
jfitzgerald@fmfpc.com
mmonroe@fmfpc.com
tflynn@fmfpc.com

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
JASON KELLOGG *(pro hac vice)*
MARCELO DIAZ-CORTES *(pro hac vice)*
100 Southeast Second Street, 36th Floor
Miami, FL 33134
Tel: 305/803-8788
jk@lkslg.com
md@lklsg.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE:<br><br>SILVERGATE CAPITAL CORPORATION | Case No: 23-cv-01406-RBM-BLM<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Judge: Hon. Ruth Bermudez Montenegro<br>Hearing Date: Feb. 9, 2026, 10:00 a.m.<br>Courtroom: 5B<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

NOTICE OF MOTION ......................................................................... i

MEMORANDUM ................................................................................. 1

    I.     INTRODUCTION ..................................................... 1

    II.    FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

        A.    The Pleadings ................................................... 2

        B.    Discovery Efforts ............................................... 2

        C.    Settlement Efforts .............................................. 3

        D.    Bankruptcy Proceedings ..................................... 3

    III.   TERMS OF THE SETTLEMENT ........................................... 4

    IV.   NOTICE AND SETTLEMENT ADMINISTRATION ....................... 5

    V.    ARGUMENT ........................................................... 7

        A.    The Court Should Grant Final Approval of the Settlement ......... 7

            1.    The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel ................................................... 8

            2.    The Settlement Treats All Class Members Equitably ......... 9

            3.    The Relief Provided to the Class is Adequate. ............... 11

                a.    The Costs, Risks, and Delay of Further Litigation ............. 11

                b.    The Terms of Any Proposed Award of Attorney's Fees and Service Awards. ................................... 13

                c.    There are No Separate Agreements ................................... 14

        B.    The Court Should Certify the Settlement Class ................... 14

            1.    The Settlement Class satisfies Rule 23(a) ................... 14

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR FINAL SETTLEMENT APPROVAL

a.   Numerosity ................................................................ 14

b.   Commonality ............................................................ 14

c.   Typicality .................................................................. 15

d.   Adequacy .................................................................. 15

2.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ......................................................................... 16

a.   Predominance .......................................................... 16

b.   Superiority ............................................................... 17

C.   The Notice Plan Satisfied Due Process and Rule 23 .............................. 18

1.   The Notice Plan Gave the Best Practicable Notice ..................... 18

VI.   CONCLUSION ................................................................................. 20

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR FINAL SETTLEMENT APPROVAL

# TABLE OF AUTHORITIES

**Cases**

*Altamirano v. Shaw Indus., Inc.,*
2015 WL 4512372 (N.D. Cal. July 24, 2015)...................................................................9

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)...........................................................................................................16

*Bellinghausen v. Tractor Supply Co.,*
306 F.R.D. 245 (N.D. Cal. 2015).....................................................................................14

*Bhatia v. Silvergate Bank*
725 F. Supp. 3d 1079 (S.D. Cal. 2024).............................................................................2

*Boyd v. May Trucking Co.*
2019 WL 12763009 (C.D. Cal. July 1, 2019)...................................................................18

*Castro v. ABM Indus., Inc.,*
325 F.R.D. 332 (N.D. Cal. 2018).....................................................................................15

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992)..........................................................................................11

*Coppel v. SeaWorld Parks & Ent., Inc.*
2025 WL 1346873 (S.D. Cal. May 8, 2025).....................................................................18

*Deatrick v. Securitas Sec. Servs. USA, Inc.*
2016 WL 5394016 (N.D. Cal. Sept. 27, 2016) ................................................................18

*Elkies v. Johnson & Johnson Servs., Inc.,*
2020 WL 10055593 (C.D. Cal. June 22, 2020) ...............................................................19

*Fitzgerald v. Pollard*
2024 WL 3262631 (S.D. Cal. July 1, 2024) ....................................................................13

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)..............................................................................14, 15, 17

*In re Ariz. Theranos, Inc. Litig.,*
2020 WL 5435299 (D. Ariz. Mar. 6, 2020) .....................................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*
654 F.3d 935 (9th Cir. 2011).........................................................................................9, 13

*In re BofI Holding, Inc. Sec. Litig.*
2022 WL 2068424 (S.D. Cal. June 8, 2022)..................................................................9, 10

*In re BofI Holding, Inc. Sec. Litig.,*
2022 WL 9497235 (S.D. Cal. Oct. 13, 2022) ..................................................................14

*In re Charles Schwab Corp. Sec. Litig.*
  2010 WL 1445451 (N.D. Cal. 2010).................................................................18

*In re Google Location History Litig.*
  2024 WL 1975462 (N.D. Cal. May 3, 2024) .....................................................19

*In re Hyundai & Kai Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019)..............................................................7, 16, 17

*In re ImmunityBio, Inc. Sec. Litig.*,
  2025 WL 1686263 (S.D. Cal. June 16, 2025)....................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)................................................................................8

*In re MyFord Touch Consumer Litig.*
  2019 WL 1411510 (N.D. Cal. Mar. 28, 2019)...................................................10

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir.1995)...................................................................................9

*In re Packaged Seafood Prods. Antitrust Litig.*
  2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ...................................................19

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........................................7, 14, 15

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............................................................8

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015).....................................................9

*Jabbari v. Farmer*,
  965 F.3d 1001 (9th Cir. 2020)...........................................................................16

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 1579251 (S.D. Cal. Apr. 22, 2021) ...................................................10

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ...................................................10

*Kim v. Space Pencil, Inc.*,
  2012 WL 5948951 (N.D. Cal. Nov. 28, 2012)...................................................11

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998).............................................................................8

*Mandalevy v. Bofi Holding Inc.*,
  2022 WL 4474263 (S.D. Cal. Sept. 26, 2022)............................................14, 15

iv

*Martinez v. Univ. of San Diego*,
   2024 WL 4713891 (S.D. Cal. Nov. 7, 2024) ................................................................7, 18

*Mergens v. Sloan Valve Co.*,
   2017 WL 9486153 (C.D. Cal. Sept. 18, 2017)................................................................15

*Mezzadri v. Med. Depot, Inc.*,
   2016 WL 5107163 (S.D. Cal. May 12, 2016)................................................................14

*Mullins v. Premier Nutrition Corp.*,
   2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ...............................................................17

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
   2016 WL 2610107 (S.D. Cal. May 6, 2016), *aff'd*, 926 F.3d 528 (9th Cir. 2019)............12

*Nelson v. Avon Prods., Inc.*
   2017 WL 733145 (N.D. Cal. Feb. 24, 2017) .................................................................18

*Newton v. Am. Debt Servs., Inc.*,
   2015 WL 3614197 (N.D. Cal. June 9, 2015) ..........................................................14, 16

*Rael v. Children's Place, Inc.*
   2020 WL 434482 (S.D. Cal. Jan. 28, 2020)..................................................................19

*Rannis v. Recchia*
   380 Fed. App'x. 646 (9th Cir. 2010)..............................................................................18

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
   2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ............................................................11

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010).......................................................................................15

*Rodriguez v. W. Pub'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)......................................................................................9, 12

*Sanchez v. Mohawk Indus., Inc.*
   2024 WL 4556094 (E.D. Cal. Oct. 23, 2024) ...............................................................13

*Santillan v. Verizon Connect, Inc.*
   2024 WL 627998 (S.D. Cal. Feb. 13, 2024) .................................................................13

*Scheuneman v. Arena Pharms., Inc.*,
   2020 WL 3129566 (S.D. Cal. June 12, 2020)...............................................................17

*Smith v. Keurig Green Mountain, Inc.*
   2022 WL 2644105 (N.D. Cal. July 8, 2022) .................................................................19

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ..................................................................................12

*Taylor v. Populus Grp., LLC*
   2023 WL 139898 (S.D. Cal. Jan. 9, 2023)........................................................13

*Tyson Foods, Inc. v. Bouaphakeo,*
   577 U.S. 442 (2016) .........................................................................................16

*Voulgaris v. Array Biophrama,*
   2021 WL 6331178 (D. Colo. Dec. 3, 2021).......................................................9

**Statutes**

11 U.S.C. § 101-1532........................................................................................3

28 U.S.C. § 1292(b) ..........................................................................................2

Cal. Bus. and Prof. Code § 17200 ....................................................................2

**Other Authorities**

McLaughlin on Class Actions § 5:80 (21st ed.) ..............................................18

**Rules**

Fed. R. Civ. P. 23(a)........................................................................................16

Fed. R. Civ. P. 23(a)(2)....................................................................................14

Fed. R. Civ. P. 23(a)(3)....................................................................................15

Fed. R. Civ. P. 23(b)(3)..........................................................................14, 16, 17

Fed. R. Civ. P. 23(c)(2)(B)..........................................................................17, 18

Fed. R. Civ. P. 23(e)..........................................................................................7

Fed. R. Civ. P. 23(e)(1)(B)...............................................................................17

Fed. R. Civ. P. 23(e)(2)..................................................................................7, 11

Fed. R. Civ. P. 23(e)(2)(A)-(B)..........................................................................8

Fed. R. Civ. P. 23(e)(2)(c)(iii).........................................................................13

Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................9

Fed. R. Civ. P. 23(e)(3)....................................................................................13

Fed. R. Civ. P. 26 ..............................................................................................3

Fed. R. Civ. P. 26(d)(2)......................................................................................2

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR FINAL SETTLEMENT APPROVAL

## NOTICE OF MOTION

**PLEASE TAKE NOTICE THAT** Plaintiffs,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order:

(1)    granting final approval of the proposed Settlement Agreement;[2]

(2)    certifying the Settlement Class;

(3)    causing the Settlement to become effective for all purposes;

(4)    ordering the parties to implement the Settlement; and

(5)    finding that entry of judgment in accordance with the Settlement Agreement is appropriate.[3]

Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Joint Counsel Declaration of Class Counsel in Support of Plaintiffs' Motion for Final Settlement Approval and Motion for Attorneys' Fees, Expenses, and Service Awards ("Attorney Decl."), the Declaration of Julie Meichsner in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Final Meichsner Decl."), the pleadings and papers on file in *In re: Silvergate Capital Corp.*, No. 23-cv-01406-RBM-BLM (the "Litigation"), the Court's October 21, 2025 Order Granting Plaintiffs' Renewed Motion for Preliminary Settlement Approval (the "Preliminary Approval Order"), (Dkt. No 85), and any other matter this Court may take notice of.

---

[1] Plaintiffs are Joewy Gonzalez, Nicole Keane, and Golam Sakline.

[2] Unless otherwise defined, capitalized terms have the meaning attributed to them in the Settlement Agreement.

[3] A Final Approval Order and Judgment of Dismissal; Order Re Attorneys' Fees, Costs, and Service Awards is being submitted separately.

1

**MEMORANDUM**

## I.    INTRODUCTION

Plaintiffs respectfully request that the Court grant final approval of their $10 million non-reversionary settlement with Defendants Silvergate Bank, Silvergate Capital Corporation, and Alan Lane. The Settlement is fair, reasonable, and adequate and fully complies with Rule 23. It marks a significant recovery from the bankrupt Silvergate and will provide additional relief, beyond that obtained in the FTX Bankruptcy,[4] for those affected by the multi-billion-dollar collapse of the FTX cryptocurrency exchange. As recounted in Plaintiffs' Renewed Motion for Preliminary Settlement Approval (Dkt. No. 74), Plaintiffs zealously prosecuted their aiding and abetting claims against Defendants until Silvergate filed for bankruptcy protection. Despite Silvergate's insolvency, Plaintiffs negotiated the Settlement and obtained stay relief from the bankruptcy court to seek approval of the Settlement. Thus, an uncertain road ahead, coupled with Silvergate's limited and depleted pool of assets, demonstrates that the Settlement is an excellent outcome under the circumstances.

The Settlement will result in pro rata payments to members of the Settlement Class based on their approved claims—amounts that have been confirmed in the FTX Bankruptcy through analyses of FTX's records and subject to an objection period. The Class Notice reached over 46,000 potential class members by mail, and others through a targeted digital media campaign. On October 21, 2025, the Court preliminarily approved the Settlement, authorized the proposed notice and administrative process, and set the final approval schedule. Class Counsel and the Settlement Administrator have complied with the Court's preliminary approval order and are awaiting objections and opt-out requests, if any. Because the Settlement is the superior alternative to continued litigation, and all due process prerequisites are met, the Court should grant final approval.

---

[4] "FTX Bankruptcy" refers to *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del.).

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Pleadings

Plaintiffs filed the operative Consolidated First Amended Class Action Complaint ("Complaint") on May 19, 2023. Dkt. No. 14. Plaintiffs alleged six causes of action: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) unjust enrichment; (4) aiding and abetting conversion; (5) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code §§ 17200, *et seq.*; and (6) negligence. *Id.* In short, Plaintiffs alleged they deposited funds into an FTX account at Silvergate Bank to participate in cryptocurrency trading on the FTX trading platform, but Silvergate instead allowed those funds to be commingled with *Alameda* funds and converted by FTX's principal, Sam Bankman-Fried, and his confederates. Plaintiffs alleged Defendants aided and abetted fraud and breaches of fiduciary duty by knowingly permitting the fraudulent transactions and commingling of funds, and by creating the Silvergate Exchange Network, or SEN, to ramp-up investment in cryptocurrency. *See generally Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1079 (S.D. Cal. 2024).

On June 19, 2023, Defendants moved to dismiss Plaintiffs' claims. Dkt. No. 16. On March 20, 2024, the Court denied the motion in its entirety. *See Bhatia*, 725 F. Supp. 3d 1079; Dkt. No. 25. On April 17, 2024, Defendants filed their Answer but also filed two motions seeking either reconsideration of the Court's Order, or permission for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Dkt. Nos. 36-39. The motions were fully briefed and pending when the parties reached an agreement in principle (that led to the Settlement). *See* Dkt. Nos. 46-47, 52, 54. The Court had not issued a decision when Defendant Silvergate Capital Corporation filed for bankruptcy. *See* Dkt. Nos. 64-65.

### B.    Discovery Efforts

Plaintiffs have been engaged in discovery and investigative efforts since the outset. They delivered early requests for production under Fed. R. Civ. Pro. 26(d)(2) to each Defendant on November 16, 2023—before the Court's Notice and Order for Early Neutral Evaluation Conference and Case Management Conference (Dkt. No 40), and before the

2

parties' Rule 26 conference. Thereafter, the parties met and conferred to identify sources of relevant custodial and non-custodial data, and negotiate search terms, custodians, and the relevant time period and parameters for searches for responsive documents. The parties also focused on Defendants' preservation and collection efforts as Silvergate began its winddown process. After the parties negotiated a protocol for the discovery of electronically searchable information ("ESI") and a stipulated protective order (Dkt. Nos. 35, 56), Defendants produced data and 10,182 documents, exceeding 120,000 pages. Dkt. No. 74-1 (Second Joint Declaration of Proposed Class Counsel in Support of Renewed Motion for Preliminary Settlement Approval ("Prelim. Jt. Decl.") ¶ 22.) Class Counsel hosted, analyzed, and coded this ESI on a dedicated document database. *Id.* In addition, counsel pursued public records act requests from regulators, interviewed confidential FTX informants, and consulted with experts to analyze the Class's potential damages. *Id.*¶ 23. Plaintiffs and Class Counsel also responded to Defendants' discovery requests by serving separate responses and objections and producing relevant documents. *Id.* ¶ 24.

### C. Settlement Efforts

On August 29, 2024, with Silvergate's bankruptcy seemingly imminent, the parties mediated with the Honorable Layn R. Phillips (Ret.), of Phillips ADR Enterprises. *Id.* ¶ 26. In advance of the mediation, Class Counsel developed a comprehensive presentation and assessed the implications of Silvergate's likely bankruptcy. *Id.* ¶¶ 26, 52. The parties were unable to reach agreement during the mediation, but on September 4, 2024, the parties accepted the mediator's proposal to settle the matter for $10 million. *Id.* ¶ 26. The Settlement Agreement now before the Court memorializes the agreement reached in mediation. *See id.*, Ex. 1 ("SA").

### D. Bankruptcy Proceedings

On September 17, 2024, Silvergate filed for Chapter 11 bankruptcy. *See In re: Silvergate Capital Corporation et al.*, No. 24-12158 (KBO) (Bankr. D. Del.) (the "Silvergate Bankruptcy"). The Silvergate Bankruptcy automatically stayed this action under 11 U.S.C. § 362(a)(1). *See* Dkt. Nos. 64-65. On February 25, 2025, the bankruptcy court lifted the

automatic stay under Section 362(a)(1) to permit the approval process to proceed in this Court. Dkt. No. 67. On November 13, 2025, the bankruptcy court entered its final order confirming the Chapter 11 Plan submitted in that action (the "Plan"). Bank. D. Del., Case No. 24-12158, Dkt. No. 1077.  The Plan embodies a global resolution of a multitude of claims against the debtors' estate; and this Court's final approval of the Settlement in this action remains a precondition of that Chapter 11 Plan becoming effective.

## III.    TERMS OF THE SETTLEMENT

The Settlement calls for a $10 million, non-reversionary payment in exchange for a "full and final release, settlement, and discharge of all Settlement Class Released Claims." SA ¶¶ 1.10, 1.11, 1.27, 2.1, 3.2, 6.4, 9.3. The non-reversionary settlement fund will cover all settlement-related expenses, including attorneys' fees and costs, and service awards. *Id.* ¶¶ 1.11, 1.27, 6.4, 9.3, 10.1. The Net Settlement Fund will be allocated among the Settlement Class pursuant to the Plan of Allocation, which is subject to the Court's approval and severable from the Settlement Agreement. *Id.* ¶¶ 6.1-6.3; Dkt. No. 74-7 (Plan of Allocation). The Plan of Allocation, in turn, proposes a *pro rata* distribution to each approved claimant based on their claim amount, which was determined in the FTX Bankruptcy. Prelim. Jt. Decl. ¶¶ 37-38.

The Settlement Class is "[a]ll persons or entities who, between April 1, 2019, and November 11, 2022, sent or deposited fiat currency into an FTX- or Alameda-related account at Silvergate Bank and who, on November 11, 2022, still had an account on FTX.com or FTX.US that contained cryptocurrency, fiat currency, or both." *Id.* ¶ 1.23.[5] To avoid conflicts, the Settlement Class definition excludes Defendants, Silvergate insiders and their related parties, Class Counsel, and judicial officers and staff assigned to this case and their immediate family members. *See* SA ¶ 1.23. There are no other exclusions from the Settlement Class.

---

[5] The Settlement Class is almost identical to the class alleged in the Complaint, adding only the words "persons or entities" for clarity. Doc. 14 ¶ 206.

To account for the effect of the Silvergate Bankruptcy, the Settlement Agreement coordinates the approval process across cases. First, the parties were to stipulate to relief from the bankruptcy stay to seek this Court's approval of the Settlement under Rule 23. *Id.* ¶ 4.1. That process is complete. Dkt. No. 67. Then, once this Court grants final approval of the Settlement Agreement, "the Agreement shall be subject to Bankruptcy Court approval," and "Defendants shall take all actions necessary in the Bankruptcy Court to obtain approval of and implement th[e] Agreement." *Id.* ¶ 4.2; *see also id.* ¶ 4.3 ("The Parties shall cooperate, assist, and undertake all reasonable actions to support Silvergate . . . in seeking the Bankruptcy Court's approval of this Agreement . . . pursuant to Federal Rule of Bankruptcy 9019."). If the Bankruptcy Court declines to approve the Settlement Agreement, any Party may terminate it. *Id.* ¶¶ 1.19, 4.4.

The Settlement Agreement also provides "Class Counsel may apply to the District Court for a Fee and Expense Award from the Settlement Fund," but that "Plaintiffs' approval of th[e] Agreement, and Class Counsel's support of the Agreement, are not contingent on the amount of the Fee and Expense Award." *Id.* ¶ 9.1. Similarly, "Plaintiffs may apply for Service Awards," *id.* ¶ 10.1, but "Plaintiffs' approval of the Settlement Agreement is not contingent on their making an application for a Service Award, or the District Court approving any application for a Service Award," *id.* ¶ 10.2.

## IV. NOTICE AND SETTLEMENT ADMINISTRATION

The Court-approved notice plan centers on (i) mailed notice based on Silvergate's internal records (the "Transaction List") containing incoming wire information and associated names and street addresses for over 50,000 individuals after de-duplication, and (ii) a digital targeted advertising campaign across various platforms. Dkt. No. 85 ¶¶ 7, 10; Dkt. No. 74-14 (the "Prelim. Meichsner Decl.") ¶¶ 8-9, 13-16; Final Meischner Decl. ¶¶ 7-9. The mailed notice uses contact information from the Transaction List, which reflects 271,953 relevant transactions and is the best available source of Class Member contact information. Prelim. Jt. Decl. ¶ 36. These recipients have received postcard notice (*i.e.*, Short Form Notice) by first class U.S. Mail. Final Meichsner Decl. ¶ 9. The additional digital notice campaign,

designed by the Settlement Administrator to reach 80% of the Class, reached cryptocurrency investors through targeted advertisements on platforms like Facebook, X, YouTube, and Reddit. Prelim. Meichsner Decl. ¶¶ 17-32, 43; Final Meischner Decl. ¶ 11. Web users targeted by the campaign will see short notice or banner ads that provide the user a link to all relevant settlement information. *See* Final Meischner Decl. ¶ 11 & Ex. E. In total, these advertisements are expected to deliver approximately 19 million impressions to the U.S. target audience and 4.5 million impressions to the internal audience. *Id* ¶ 12. On December 2, 2025, the Settlement Administrator issued a press release through PR Newswire's Global Crypto distribution network, which targets thousands of online media outlets focusing on cryptocurrency and blockchain reporting. *See id.* ¶ 13 & Ex. F. The day before, December 1, 2025, the Settlement Website—FTXBankSettlement.com—went live. *Id.* ¶ 14. It includes important dates and deadlines; Settlement-related documents, such as the Settlement Agreement; and an online Claim Form module. *Id.* A toll-free number has also been set up, and went live on December 1, to provide information and allow Settlement Class Members to make inquiries regarding the Settlement. *Id.* ¶ 15.

As for the contents of the notices, the Short Form Notice and the Settlement Administrator's press release provide the essential information about the Settlement and the means to access the settlement website, which contains the Long Form Notice and other information, describing in plain English the terms of the Settlement and the reader's options. *See* Final Meichsner Decl. Exs. D, F.

To be eligible for a distribution from the Settlement Fund, claimants must submit a Claim Form attesting to their deposit of funds into an FTX or Alameda-related account with Silvergate.[6] *See* Dkt. No. 74-9. For claimants appearing on the Transaction List, they need only submit evidence of their Claim Amount, as determined in the FTX Bankruptcy. *Id.* For

---

[6] Alternatively, Settlement Class Members may object or opt out of the Settlement. *See* Preliminary Approval Order ¶¶ 16-18, 21.

*In Re: Silvergate Capital Corp.*, Case No. 23-cv-01406-RBM-BLM
MOTION FOR FINAL SETTLEMENT APPROVAL

claimants that do not appear on the Transaction List, they must provide proof they made a deposit into such an account at Silvergate. *Id.*

The Settlement Administrator is charged with receiving and approving claims, then calculating the *pro rata* distribution for each approved claimant. Prelim. Jt. Decl. ¶ 37; Dkt. 74-7 (Plan of Allocation). Each approved claimant's *pro rata* distribution will be calculated by multiplying the total value of the Net Settlement Fund by a fraction, for which (a) the numerator is the Claim Amount for that claimant, and (b) the denominator is the sum of all Claim Amounts for all claimants. Doc. 74-7 ¶ 9. For administrative efficiency, each claimant will receive a minimum payment of $5.00, and payments to claimants who would otherwise receive less than $5.00 on a *pro rata* basis will be increased to $5.00. *Id.* ¶ 16. The amounts paid to claimants who would otherwise receive more than $5.00 will be reduced on a *pro rata* basis until all claimants receive the minimum $5.00 payment. *Id.* The deadline for Class Members to submit Claim Forms, object, or opt out is January 30, 2026. Dkt. No. 85 at 12. Given that the claims period has just begun, Plaintiffs will provide an update on the total number of claims filed, objections, and opt-outs on reply.

## V.    ARGUMENT

### A.    The Court Should Grant Final Approval of the Settlement

"The claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement[ ]may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned[.]'" *Martinez v. Univ. of San Diego*, 2024 WL 4713891, at *10 (S.D. Cal. Nov. 7, 2024) (Montenegro, J.) (quoting *In re Hyundai & Kai Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)). "A court may approve a class action settlement of a class only 'after a hearing and on finding that it is fair, reasonable, and adequate,' and that it meets the requirements for class certification." *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *2 (S.D. Cal. Oct. 30, 2020) ["*Regulus*"] (quoting Fed. R. Civ. P. 23(e)(2)).

In determining whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2)

directs the Court to consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate"; and "the proposal treats class members equitably relative to each other." *Martinez v. Univ. of San Diego*, 2024 WL 4713891, at *10-1 (S.D. Cal. Nov. 7, 2024) (citing Fed. R. Civ. P. 23(e)(2)). These factors, which have not changed following the Preliminary Approval Order, all favor final approval.

### 1. The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Informed and Experienced Counsel

First, the Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As the Court preliminarily found, the Settlement resulted from arms' length negotiations with Defendants through experienced counsel and with the help of an accomplished mediator. By the time the parties reached the Settlement, they had the benefit of the Court's ruling on Defendants' motion to dismiss, and briefing on Defendants' pending motion for reconsideration or interlocutory appeal of that ruling. Prelim. Jt. Decl. ¶¶ 14-17, 20-21.

Plaintiffs also had the benefit of meaningful discovery, most notably the receipt and review of over ten thousand documents—representing about 120,000 pages—and several FTX insider witness interviews. *Id.* ¶¶ 22-24. In the meantime, Defendants continued to signal financial constraints, which ultimately materialized with Silvergate's bankruptcy. *Id.* ¶¶ 25, 27. The stage at which the Settlement was reached therefore demonstrates that the parties were well-informed of the strengths and weaknesses of the case. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (arm's-length negotiations typically take place over an extended period with experienced counsel on both sides, each with an understanding of the strengths and weaknesses of their own and the opposing party's

claims); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (citation omitted).

The Ninth Circuit notes that "'[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Here, Class Counsel are seasoned class action attorneys, with hard-won experience in cases arising from financial frauds, and they understand the potential upside and risks attendant to this case. *See* Prelim. Jt. Decl. ¶¶ 59-62.

Moreover, Judge Layn Phillips, "a nationally recognized mediator of complex cases and class actions," *Voulgaris v. Array Biophrama*, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021), mediated the Settlement. The Settlement, indeed, is the result of the parties' acceptance of Judge Phillips' mediator's proposal, days after their in-person mediation session concluded without resolution. Prelim. Jt. Decl. ¶ 26. Accordingly, Plaintiffs mediated with enough information to assess the fairness of the Settlement and did so with the support of Class Counsel and an experienced neutral. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015).

Finally, the all-cash nature of the Settlement demonstrates it was achieved through vigorous litigation, rather than collusion, since "cash . . . is a good indicator of a beneficial settlement," *W. Pub'g*, 563 F.3d, 965 (9th Cir. 2009), and a sign that Class Counsel did not subvert the class's interests to Defendants' interests "in exchange for red-carpet treatment on fees." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quotation omitted). The Court should find that the Settlement is a good faith, non-collusive settlement.

## 2. The Settlement Treats All Class Members Equitably

The Settlement also "treats class members equitably relative to each other." Fed. R.

Civ. P. 23(e)(2)(D). This factor focuses on whether there is disparity among what class members are to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015); *see also In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *8 (S.D. Cal. June 8, 2022) (allocation plan should treat similarly situated class members similarly). "Approval of a plan of allocation of settlement proceeds in a class action under [Rule] 23 is governed by the same standards of review applicable to approval of settlement as a whole: the plan must be fair, reasonable and adequate." *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *7 (S.D. Cal. Nov. 30, 2021). The Settlement treats all Class Members equitably based on the *pro rata* distribution outlined in the Plan of Allocation.

All Settlement Class Members sent or deposited funds with Silvergate Bank and lost access to their money when FTX filed for bankruptcy. Their loss of funds thus defines their common injury, and all share an interest in recovering from Silvergate. The claims procedure is based on Class Members' claim values in the FTX Bankruptcy. It requires that most Class Members—the ones on the Transaction List—submit evidence of their Claim Amount, as determined in the FTX Bankruptcy, which is information received in the past year. If a Class Member does not appear on the Transaction List, they must also submit evidence that they sent or deposited funds to a Silvergate FTX or Alameda-related account. But even then, the claims procedure remains substantially less burdensome than the customary multipage proof of claim required in a securities case. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 1579251, at *13 (S.D. Cal. Apr. 22, 2021) (approving four-page claim form).

The Plan of Allocation, which calculates distributions based on the Settlement Class Members' relative loss, provides the simplest and most equitable way to distribute the Settlement Fund. Settlement Class Members with approved claims will receive a *pro rata* share of the net settlement fund. *See* Dkt. No. 74-7 (Plan of Allocation); *see also In re BofI*, 2022 WL 2068424, at *9 (approving allocation plan providing for pro rata distribution). Moreover, the minimum payment of $5.00 for each valid Class Member ensures that all

10

eligible Class Members "will receive a guaranteed measure of recovery." *See In re MyFord Touch Consumer Litig.,* 2019 WL 1411510, at *5 (N.D. Cal. Mar. 28, 2019); *see also In re ImmunityBio, Inc. Sec. Litig.,* 2025 WL 1686263 (S.D. Cal. June 16, 2025) (a plan of allocation "need not be perfect," and need only have a "reasonable, rational basis . . . particularly if recommended by experienced and competent class counsel." (citation and quotations omitted)).

### 3.    The Relief Provided to the Class is Adequate.

The Court must next consider whether the relief provided by the Settlement is adequate, taking into account the following factors: (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class";[7] (3) "the terms of any proposed award of attorney's fees"; and (4) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). Each of these factors supports final approval of the Settlement.

### a.    The Costs, Risks, and Delay of Further Litigation

"[A] settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992). Here, the extent of any recovery is a function of collectability. Silvergate Bank voluntarily liquidated (under oversight from the Federal Reserve Board) after FTX, the bank's biggest customer, collapsed. Shortly after the Settlement was reached, Silvergate Capital filed for bankruptcy. As the parties were negotiating settlement, Silvergate also faced a securities class action, derivative action, and numerous regulatory investigations, all of which consumed Defendants' remaining insurance proceeds. Defendant Lane is not a meaningful source of recovery either. His insurance coverage is depleted. He lacks sufficient personal wealth to satisfy a judgment commensurate with the scale of this litigation. This lack of collectability favors a finding that the $10 million Settlement Fund is

---

[7] The Plan of Allocation and claims process is described above in connection with the equitable treatment to the Settlement Class Members.

adequate. *See Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016) (approving settlement where it was "well-supported that Defendants do not have the ability to pay a larger settlement"); *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.").

Apart from the collectability concerns, Plaintiffs face challenges on the merits. Plaintiffs would have to obtain relief from the Silvergate Bankruptcy's stay to litigate this action (as opposed to resolve it). They would have faced months of additional discovery, including substantially more document discovery and dozens of depositions of witnesses, some of whom may be incarcerated or invoke the 5th Amendment. Plaintiffs would also face the risk of obtaining certification and sustaining it through trial and on appeal. If a class was certified, Defendants would almost certainly seek Rule 23(f) review, and in any event, a "district court may decertify a class at any time." *W. Pub'g*, 563 F.3d at 966 (citation omitted). Decertification happens with some regularity, including in this district. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, 2016 WL 2610107, at *5-8 (S.D. Cal. May 6, 2016), *aff'd*, 926 F.3d 528 (9th Cir. 2019). Proceeding with trial and then defending a judgment on appeal would also delay any recovery by years. Lane has also made colorable arguments as to why liability should not attach to him personally.

Finally, the FTX Bankruptcy has already returned most Class Members' lost investments with interest. For example, Mr. Sakline, Mr. Gonzalez, and Ms. Keane were repaid the majority of their losses. The distributions here will add to the recovery and compensate Class Members for the loss of the use of their money during a time of unprecedented rise in cryptocurrency values.

Given this risk and delay and considering Class Members' distributions from FTX Bankruptcy, the settlement amount is fair, reasonable and adequate. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have

reached is even more compelling given the substantial litigation risks in this case.").

### b.  The Terms of Any Proposed Award of Attorney's Fees and Service Awards.

The Settlement provides that Class Counsel may request an award of fees and reimbursement of costs to be paid from the Settlement Fund. SA ¶ 9.1. Defendants agreed not to object to Class Counsel's request for attorneys' fees up to one-third of the Gross Settlement Amount. SA ¶ 9.2. Plaintiffs also may apply for Service Awards payable from the Settlement Fund. *Id.* ¶ 10.1. The Settlement and the parties' approval thereof are not contingent on the grant of any fee, expense or service award. *Id.* ¶¶ 9.1, 10.2. Along with this Motion, Plaintiffs are filing a Motion for Award of Attorneys' Fees, Expenses, and Service Awards in support of their requests.

For purposes of Rule 23(e)(2)(c)(iii), the provisions on attorneys' fees and service awards support final approval. Despite Defendants' agreement not to challenge a fee request of up to one-third, the Settlement does not run afoul of *In re Bluetooth*, 654 F.3d at 935: the case was actively litigated through motion practice and discovery, the requested fee award is not disproportionate to the recovery of the class, there is no possible reversion to Defendants, and the Settlement was reached with the help of an experienced mediator. *See Taylor v. Populus Grp., LLC*, 2023 WL 139898, at *3-4 (S.D. Cal. Jan. 9, 2023) (noting presence of "clear sailing provision" while concluding the fee request was reasonable); *Fitzgerald v. Pollard*, 2024 WL 3262631, at *8 (S.D. Cal. July 1, 2024) ("Here, there is no evidence before the court that demonstrates that the class would have received more meaningful relief if Defendants had simply been permitted to oppose Class Counsel's fee application."); *Sanchez v. Mohawk Indus., Inc.*, 2024 WL 4556094, at *16 (E.D. Cal. Oct. 23, 2024) (noting presence of "clear sailing" agreement but finding no collusion where fund was "non-reversionary"); *Santillan v. Verizon Connect, Inc.*, 2024 WL 627998, at *8 (S.D. Cal. Feb. 13, 2024) (no evidence of collusion in part because the settlement was negotiated with the help of "a respected mediator" after years of litigation). The fee and service award provisions do not suggest the Settlement is collusive or otherwise inadequate.

### c. There are No Separate Agreements

Rule 23(e)(3) requires the parties to "identify[] any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). The only other agreement between the parties is the Confidential Supplemental Letter, which establishes the threshold number of opt-outs that would allow Defendants to terminate the Settlement, and will be provided to the Court upon request. *See* Prelim. Jt. Decl. ¶ 62; SA ¶¶ 8.2-8.3. This agreement is properly kept confidential. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7 (S.D. Cal. Oct. 13, 2022). This factor supports final approval.

### B. The Court Should Certify the Settlement Class

In its Preliminary Approval Order, the Court preliminarily found that the Settlement Class met the requirements of Rule 23(b)(3). Dkt. No. 85 at 2-5. The facts and issues supporting certification have not changed. Plaintiffs therefore request that the Court affirm its preliminary finding and certify the Settlement Class for purposes of the Settlement. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015).

### 1. The Settlement Class satisfies Rule 23(a)

### a. Numerosity

The number of Settlement Class Members is at least tens of thousands. Prelim. Jt. Decl. ¶ 36; *see also* FTX Bankruptcy, Dkt. No. 30631 at 3 (as of June 4, 2025, "approximately 97,400 customer proofs of claim have been filed against the Debtors and the FTX Recovery Trust"). The number of Settlement Class Members would make "joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quotation omitted). The Settlement Class therefore meets the numerosity requirement. *See Mandalevy v. Bofi Holding Inc.*, 2022 WL 4474263, at *4 (S.D. Cal. Sept. 26, 2022).

### b. Commonality

Settlement Class Members hold claims based on common facts and law: for example, whether Defendants knew of and substantially assisted FTX's fraud, breaches of fiduciary duty, and conversion of their assets. *See* Fed. R. Civ. P. 23(a)(2). "Rule 23 (a)(2)

14

commonality requires 'questions of fact or law common to the class,' though all questions of fact and law need not be in common." *Regulus*, 2020 WL 6381898, at *3 (quoting *Hanlon*, 150 F.3d at 1026). The "burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon*, 150 F.3d at 1020). The types of aiding and abetting claims settled here meet the commonality burden. *See Newton v. Am. Debt Servs., Inc.*, 2015 WL 3614197, at *6-*7 (N.D. Cal. June 9, 2015).

### c.    Typicality

For similar reasons, Plaintiffs' aiding and abetting claims are typical of those of other Settlement Class Members. *See* Fed. R. Civ. P. 23(a)(3). "Rule 23(a)(3) requires that the plaintiff show that 'the claims of the representative parties are typical of the claims or defenses of the class.'" *Regulus*, 2020 WL 6381898, at *3 (quoting Fed. R. Civ. P. 23(a)(3)). Like commonality, the typicality requirement is interpreted "permissive[ly]," and "requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). Here, Plaintiffs, like all Settlement Class Members, sent or deposited fiat currency into an FTX- or Alameda-related account at Silvergate Bank, had FTX accounts with positive balances when FTX filed for bankruptcy, and were unable to recover their funds. They all stand to recover from Defendants for their alleged knowing assistance to FTX and Bankman-Fried. Plaintiffs' and the Settlement Class Members' aiding and abetting claims thus rely on the same theories and evidence, satisfying typicality. *See Regulus*, 2020 WL 6381898, at *3.

### d.    Adequacy

Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Settlement Class and will continue to do so. *See* Fed. R. Civ. P. 23(a)(4); *see Mandalevy*, 2022 WL 4474263, at *5. Plaintiffs have helped advance the case from the outset through discovery and settlement efforts, without any conflicts. Dkt Nos. 74-4 (Sakline Decl. ¶¶ 3-4, 6), 74-5 (Gonzalez Decl. ¶¶ 3-4, 6), 74-6 (Keane Decl. ¶¶ 3-4, 6); Final Sakline Decl. ¶¶ 3-4; Final Gonzalez Decl. ¶¶ 3-4; Final Keane Decl. ¶¶ 3-4; *see also Mergens v. Sloan Valve*

15

*Co.*, 2017 WL 9486153, at *6-7 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where plaintiff had no interests antagonistic to the class); *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (plaintiffs were adequate when they "have been active participants in the litigation"). Similarly, Class Counsel at Girard Sharp, LLP, Blood Hurst & O'Reardon, LLP, Fitzgerald Monroe Flynn PC, and Levine Kellogg Lehman Schneider + Grossman LLP are experienced in complex litigation and class actions, have devoted significant time and resources to litigate on behalf of the Settlement Class, and have deployed their experience to structure a favorable settlement and pursue its approval. *See* Prelim. Jt. Decl. ¶¶ 13-27, 46, 60; Attorney Decl. ¶¶ 36-37. Plaintiffs and Class Counsel thus satisfy Rule 23(a)(4)'s adequacy requirement.

## 2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

The Settlement Class should be certified under Rule 23(b)(3), which requires that Rule 23(a) be satisfied and that the Court find common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.    Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). And "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai & Kai Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019); *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005-1006 (9th Cir. 2020).

As noted above, the Settlement Class's claims center on Defendants' knowledge and assistance to FTX and Bankman-Fried. These common facts as to liability, and the common legal issues that accompany them, may be resolved in a single adjudication for the entire class. *See Newton*, 2015 WL 3614197, at *8. "Either [Defendants] had actual knowledge of

16

1   [FTX]'s law violations, and acted with the intent to substantially assist [FTX] . . ., or [they]

2   did not." *Id.* Proof of the Settlement Class's damages also is subject to common

3   methodology, *i.e.*, what they lost by depositing their funds or assets into an Alameda or FTX

4   account at Silvergate Bank. These figures have been determined already in the FTX

5   Bankruptcy and will be confirmed through the claims process. *See* Prelim. Jt. Decl. ¶¶ 37-

6   38. Common issues therefore predominate over individual inquiries for the Settlement Class.

### b.    Superiority

8        Certification of the Settlement Class also is superior to any other method for the fair

9   and efficient adjudication of this controversy. Fed. R. Civ. P. 23(b)(3). This "inquiry

10  'requires determination of whether the objectives of the particular class action procedure will

11  be achieved in the particular case.'" *Scheuneman v. Arena Pharms., Inc.*, 2020 WL 3129566,

12  at *3 (S.D. Cal. June 12, 2020) (quoting *Hanlon*, 150 F.3d at 1023).

13       Here, litigation costs, including discovery-related expenses and expert work,

14  overshadow the individual Settlement Class Members' potential damages, making it

15  impracticable for them to pursue individual claims against the Defendants. Because of the

16  "substantial disparity between litigation costs and what plaintiffs hope to recover . . . [i]t is

17  unlikely that individual claims would ever be pursued." *In re Ariz. Theranos, Inc. Litig.*,

18  2020 WL 5435299, at *9 (D. Ariz. Mar. 6, 2020) ; *see also Mullins v. Premier Nutrition*

19  *Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016)

20  ("Individual suits for small recovery amounts would overwhelm the courts and prove

21  uneconomic for potential litigants."). Concentration of the litigation in the Southern District

22  of California is also desirable, as Defendants all reside here. *See In re Ariz. Theranos, Inc.*

23  *Litig.*, 2020 WL 5435299, at *9. Finally, because this is a settlement, there are no

24  manageability issues that defeat superiority. *In re Hyundai & Kia Fuel Economy Litig.*, 926

25  F.3d 539, 556-57 (9th Cir. 2019) (*en banc*). Proceeding with certification of the Settlement

26  Class would be the most effective and efficient way to adjudicate the Settlement Class

27  Members' claims.

28

C.    **The Notice Plan Satisfied Due Process and Rule 23**

1.    **The Notice Plan Gave the Best Practicable Notice**

Rule 23 requires the Court to direct reasonable notice to all Settlement Class Members who will be bound by the Settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). The notice to Settlement Class Members must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) ("Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice."); *Coppel v. SeaWorld Parks & Ent., Inc.*, 2025 WL 1346873, at *7 (S.D. Cal. May 8, 2025) (same). As the Court found in its Preliminary Approval Order, the parties' proposed Notice Plan complies with Rule 23 and affords due process to the Settlement Class. Dkt. No. 85 at 6. Now that the Settlement Administrator has completed the Notice Plan, the Court should find that the Settlement Class received appropriate notice. *See* Final Meichsner Decl. ¶¶ 5-15.

The Class Notice used plain language in its Short Form (postcard) and its Long Form, which provided all information required under Rule 23(c)(2)(B). Dkt. Nos. 74-10 (Long Form Notice), 74-11 (Short Form Notice); Final Meichsner Decl. ¶ 5 & Exs. B-C. The Notices were modeled on the Impact Fund Notice Project's well-accepted notice templates. *See Martinez*, 2024 WL 4713891 at *12 (approving notice plan that explained basics of the settlement "in plain English"). This format has been approved by California federal courts. *See, e.g., In re Juul Labs, Inc., Mktg. Sales Prac., & Products Liab. Litig.*, Case No. 3:19-md-02913, Dkt. Nos. 3381, 3391 (N.D. Cal); *Stark, et al. v. Patreon, Inc.*, Case No. 3:22-cv-03131, Dkt. Nos. 191-93 (N.D. Cal.); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, Case No. 3:20-cv-03131, Dkt. Nos. 613-14 (N.D. Cal.).

The Short Form Notice was mailed to all potential Settlement Class Members appearing on the Transaction List, while the Long Form Notice was posted on the Settlement Website. Final Meichsner Decl. ¶¶ 5-10. "First-class mail directed to last-known addresses of class members is generally considered to be the 'best notice practicable' to ensure that

18

proper notice is received by potential class members.'" McLaughlin on Class Actions § 5:80 (21st ed.) (citing, *inter alia*, *Rannis v. Recchia*, 380 Fed. App'x. 646, 650 (9th Cir. 2010); *In re Charles Schwab Corp. Sec. Litig.*, 2010 WL 1445451, *2 (N.D. Cal. 2010)); *see also Boyd v. May Trucking Co.,* 2019 WL 12763009, at *11 (C.D. Cal. July 1, 2019) (approving notice plan using only direct mail); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, 2016 WL 5394016, at *4 (N.D. Cal. Sept. 27, 2016) (same); *Nelson v. Avon Prods., Inc.*, 2017 WL 733145, at *3 (N.D. Cal. Feb. 24, 2017) (same). The Settlement Administrator also issued a press release containing the essential settlement information and directing readers to the Settlement Website. Final Meichsner Decl. ¶ 13 & Ex. F.

To supplement the mailed notice, the Settlement Administrator also completed the digital notice campaign contemplated in the Notice Plan. *Id.* ¶¶ 11-12. This included targeted advertisements on Facebook, Instagram, YouTube, X, Reddit, and Google that focused on a target audience of adult cryptocurrency investors. *Id.* Based on its execution, the digital notice campaign is expected to deliver over 23 million online impressions and reach 80% of the Settlement Class Members. *Id.* ¶ 12.

With the mailed notice reaching the majority of potential Settlement Class Members, and the digital notice campaign designed to reach 80% of the Class, the Notice Plan satisfied Rule 23 and due process. *See* Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, Federal Judicial Center (2010); *see also see In re Packaged Seafood Prods. Antitrust Litig.*, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (approving notice program estimated to reach 70% of class members); *Rael v. Children's Place, Inc.*, 2020 WL 434482, at *13 (S.D. Cal. Jan. 28, 2020) (granting approval of notice plan designed to reach 70% of the class); *In re Google Location History Litig.*, 2024 WL 1975462, at *3 (N.D. Cal. May 3, 2024) (approving notice campaign that reached an "estimated 80% of the Settlement Class"); *Schneider*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (approving notice program that "was likely viewed by approximately 72.64% of the Settlement Class"); *Elkies v. Johnson & Johnson Servs., Inc.*, 2020 WL 10055593, at *2 (C.D. Cal. June 22, 2020) (approving notice

19

plan estimated to reach over 70% of settlement class members); *Smith v. Keurig Green Mountain, Inc.*, 2022 WL 2644105, at *11 (N.D. Cal. July 8, 2022) (similar).

Now that the Notice Plan has been executed, the Court should find Settlement Class Members received the best notice of the Settlement practicable.

## VI.   CONCLUSION

Plaintiffs respectfully request the Court grant final approval of the Settlement, in the form of the proposed order submitted with this motion, or otherwise.

Dated: December 8, 2025                    Respectfully Submitted,

                                           /s/ *Daniel C. Girard*

                                           DANIEL C. GIRARD
                                           *dgirard@girardsharp.com*
                                           JORDAN ISERN
                                           *jisern@girardsharp.com*
                                           SAMHITA COLLUR
                                           *scollur@girardsharp.com.*
                                           **GIRARD SHARP LLP**
                                           601 California Street, Suite 1400
                                           San Francisco, California 94108
                                           Telephone: (415) 981-4800

                                           TIMOTHY G. BLOOD
                                           *tblood@bholaw.com*
                                           THOMAS J. O'REARDON
                                           *toreardon@bholaw.com*
                                           JAMES M. DAVIS
                                           *jdavis@bholaw.com*
                                           **BLOOD HURST & O'REARDON, LLP**
                                           501 West Broadway, Suite 1490
                                           San Diego, CA 92101
                                           Phone: (619) 338-1100

                                           JACK FITZGERALD
                                           *jfitzgerald@fmfpc.com*
                                           MELANIE R. MONROE
                                           *mmonroe@fmfpc.com*
                                           TREVOR FLYNN
                                           *tflynn@fmfpc.com*

20

**FITZGERALD MONROE FLYNN PC**
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

JASON KELLOGG
*jk@lklsg.com*
VICTORIA J. WILSON
*vjw@lklsg.com*
MARCELO DIAZ-CORTES
*md@lklsg.com*
**LEVINE KELLOGG LEHMAN**
**SCHNEIDER + GROSSMAN LLP**
100 Southeast Second Ave., 36th Floor
Miami, Florida 33131
Telephone: (305) 403-8788

***Class Counsel***

21

**ECF CERTIFICATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: December 8, 2025                         **GIRARD SHARP LLP**


By:  /s/ *Daniel C. Girard*
                                  Daniel C. Girard


**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

Dated: December 8, 2025                         **GIRARD SHARP LLP**


By:  /s/ *Daniel C. Girard*
                                  Daniel C. Girard