**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE: SILVERGATE CAPITAL CORPORATION

Case No.: 3:23-cv-01406-RBM-BLM

**ORDER:**

**(1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT [Doc. 87]; AND**

**(2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS [Doc. 88]**

Pending before the Court are Plaintiffs' Motion for Final Approval of Settlement ("Final Approval Motion") (Doc. 87), and Motion for Attorney's Fees, Expenses, and Service Awards ("Fees Motion") (Doc. 88). On February 9, 2026, the Court held a hearing on Plaintiff's Final Approval Motion. For the reasons stated therein, Plaintiffs' Final Approval Motion and Fees Motion are **GRANTED**.

## I. BACKGROUND

Plaintiffs Nicole Keane, Joewy Gonzalez, and Golam Sakline ("Plaintiffs") were customers of the FTX cryptocurrency exchange and victims of the multi-billion dollar fraud allegedly perpetrated by its principal Sam Bankman-Fried ("SBF"). (Doc. 66 at 10.)

Each Plaintiff wired money intended for trading in cryptocurrencies on the FTX platform to Silvergate Bank, as instructed by FTX. Plaintiffs then brought several claims against Silvergate Capital Corporation, Silvergate Bank, and Silvergate Bank's former CEO Alan J. Lane ("Defendants") including for aiding and abetting FTX's fraud, conversion, breach of fiduciary duty, negligence, unfair competition, and unjust enrichment. On September 4, 2024, following mediation with the Honorable Layn R. Phillips (Ret.), Plaintiffs entered into a settlement with Defendants to resolve Plaintiffs' claims.

Plaintiffs originally filed a Motion for Preliminary Approval of Settlement (Doc. 66), which they withdrew after the Court issued an order directing the Parties to file supplemental briefing (Doc. 69). Plaintiffs then filed a Renewed Motion for Preliminary Settlement Approval ("Renewed Preliminary Approval Motion") (Doc. 74), the terms and conditions of which are set forth in the Settlement Agreement (Doc. 74-3).[1] On October 29, 2025, the Court issued an order granting Plaintiffs' Renewed Motion ("Preliminary Approval Order"). (Doc. 85.) Plaintiffs then filed the Final Approval Motion and the Fees Motion on December 8, 2025. (Docs. 87–88.)

## II. <u>MOTION FOR FINAL APPROVAL OF SETTLEMENT</u>

A class action may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)) ("*Bluetooth*"). The Ninth Circuit has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when presented with a motion for final approval, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

---

[1] The capitalized terms used in this Order have the same meaning as defined in the Settlement Agreement except as otherwise noted.

**A. Class Certification**

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In its Preliminary Approval Order, the Court found that Plaintiffs satisfied the prerequisites for class certification under Rule 23 and appointed Plaintiffs' counsel as Class Counsel. (*See* Doc. 85 at 2–5.) The Court reaffirms and incorporates its analysis under Rules 23(a) and (b)(3) as set forth in its Preliminary Approval Order. (*See id.*) Accordingly, for purposes of this Settlement, the Court **CERTIFIES** the following Settlement Class:

> All persons or entities who, between April 1, 2019, and November 11, 2022, sent or deposited fiat currency into an FTX or Alameda-related account at Silvergate Bank and who, on November 11, 2022, still had an account on FTX.com or FTX.US that contained cryptocurrency, fiat currency, or both.

(Doc. 74-3 at 6.) Excluded from the Settlement Class are: (1) Silvergate's employees, affiliates, legal representatives, predecessors, successors or assigns; (2) any entity in which Silvergate has or had a controlling interest or which has or had a controlling interest in Silvergate; (3) the employees, affiliates, legal representatives, predecessors, successors or assigns of any present or former FTX or Alameda entity; (4) any entity in which an FTX or Alameda entity has or had a controlling interest or which has or had a controlling interest in an FTX or Alameda entity; (5) the immediate family members of Alan Lane; (6) Class Counsel; and (7) the judicial officers to whom this litigation is assigned, as well as their staff and immediate family members. (*Id.*)

**B. Settlement Administration**

The Court must also determine whether the Settlement Class received adequate notice, as it "is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025; *see* Fed. R. Civ. P. 23(e)(1). The Court preliminarily approved the Parties' proposed Class Notices and Notice Plan. (*See* Doc. 85 at 6.) In support of their

Final Approval Motion, Plaintiffs filed a declaration by Julie Meichsner, the Vice President for Legal Notice at Simpluris (the "Settlement Administrator"). (Doc. 87-2, Declaration of Julie Meichsner ["Meichsner Decl."].) Meichsner recounts the Settlement Administrator's actions taken to provide notice to Class Members in accordance with the Preliminary Approval Order. (*See id.* ¶¶ 4–15 (attesting that the notice process consisted of emails to physical mailings, website creation, and skip traces for undeliverable emails).)

Having reviewed Meichsner's declaration, the Court finds that Class Notice was executed in accordance with the Preliminary Approval Order, satisfies the requirements of Rule 23 and due process, and was reasonably directed to Class Members. *See Silber v. Mabon*, 18 F.3d 1449, 1452–54 (9th Cir. 1994) (holding the "best notice practicable" requirement is satisfied by "what notice is reasonably certain to inform the absent members of the plaintiff class") (quoting *In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 865 (9th Cir. 1986)); *see also* Fed. R. Civ. P. 23(c)(2)(B). The Court further finds that the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met. (*See* Meichsner Decl. ¶ 4.)

**C. Settlement Approval**

In its Preliminary Approval Order, the Court made an initial fairness determination under Rule 23(e)(2) and found that all the pertinent factors weighed in favor of approving the Settlement. (*See* Doc. 85 at 5–6.) Because no pertinent facts have changed, the Court reaffirms its prior conclusions and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

In addition to the Rule 23(e) requirements, district courts in the Ninth Circuit traditionally consider another set of factors to determine whether the Settlement is fair, adequate, and reasonable. *See Briseño v. Henderson*, 998 F.3d 1014, 1025–26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires courts "to go beyond our precedent" by applying the heightened scrutiny set forth in *Bluetooth* to all class action settlements). In making this determination, courts consider the following factors:

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and

> likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d at 946 (quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not . . . the product of collusion among the negotiating parties.'" *Id*. at 946–947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

The Court finds that the $10,000,000 non-revisionary, cash payment to settle and resolve all claims in the action by or on behalf of the Settlement Class against Defendants is a fair, reasonable, and adequate settlement amount. This was a heavily litigated case that has been pending for nearly three years. During that time, the Parties engaged in extensive discovery, adversarial settlement negotiations, and vigorous litigation. (*See* Doc. 87 at 9–12, 16–17.)

Plaintiffs face several challenges on the merits and, due to Defendants' financial conditions, have shown a significant risk of receiving no monetary recovery. *See Class Plaintiffs*, 955 F.2d at 1295 ("[A] settling defendant's ability to pay may be a proper factor to be considered in evaluating a proposed class action settlement."). Importantly, the Settlement in this case ensures the Class Members' recovery which is "a function of collectability." (*See* Doc. 87 at 19.) As Class Counsel notes, Defendant Silvergate Bank voluntarily liquidated after FTC collapsed, Defendant Lane "lacks sufficient personal wealth to satisfy a judgment commensurate with the scale of this litigation," and Defendant Silvergate Capital filed for bankruptcy shortly after the Settlement was reached and "faced a securities class action, derivative action, and numerous regulatory investigations, all of which consumed Defendants' remaining insurance proceeds." (*Id.*) Balancing the complexity, uncertainty, and delay of continued litigation against the immediacy and certainty of settlement, the Court agrees that Plaintiffs face significant risks if this case

proceeded to trial, and that the Settlement achieves a definite result for the Class Members.

Moreover, the Settlement resulted from serious and informed arm's length negotiations by experienced counsel, who were well-informed on the strengths and weaknesses of the case, and with assistance of a skilled mediator, the Honorable Layn R. Phillips (Ret.). (*See* Doc. 87 at 11, 17.) This is "a factor weighing in favor of a finding of non-collusiveness." *Bluetooth*, 654 F.3d at 948.

No Class Members filed an objection to the Settlement and only two individuals requested exclusion. (*See* Doc. 90-1, Second Supplemental Declaration of Anne-Marie Marra of Simpluris, Inc. ["Marra Suppl. Decl."] ¶ 3–4.) Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Accordingly, the Court finds that the Settlement as a whole is "fair, reasonable, and adequate" pursuant to Rule 23(e). *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Final Approval Motion is therefore **GRANTED**.

## III. FEES MOTION

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941 (citations omitted). In its Fees Motion, Class Counsel requests: (1) attorneys' fees in the amount of $3,330,000; (2) litigation costs and expenses in the amount of $102,280.30; and (3) service awards of $10,000 each to Plaintiffs Sakline, Gonzalez, and Keane. (Doc. 88 at 27.) The Court addresses each request in turn.

### A. Attorneys' Fees

Under Federal Rule of Civil Procedure 23(h), any award of attorneys' fees must be

reasonable. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Bluetooth*, 654 F.3d at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022).

Under the percentage-of-recovery method, the Ninth Circuit has determined a benchmark for a reasonable fee award is 25% of the common fund. *Id*. This rate is just a starting point for analysis and "similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple*, 50 F.4th at 784 (quoting *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)). Courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 963–64).

In this case, the requested $3,300,000 in attorneys' fees represents a 33.3% benchmark of the Settlement Amount ($10,000,000). This amount exceeds the benchmark rate of 25% and represents a 1.1 positive multiplier on Class Counsel's calculated lodestar amount, which is approximately $2,939,209.50 as of November 30, 2025 and is based on 3,670.4 collective hours of work expended by the attorneys. (*See* Doc. 88 at 23; Doc. 88-

1, Joint Declaration of Class Counsel ["Joint Decl."] ¶ 33.) In support of their lodestar analysis, Class Counsel submitted a "table[] summarizing the amount of work each timekeeper performed at different stages of this litigation" which is "sufficient for purposes of performing a lodestar cross-check." *Thomas v. MagnaChip Semiconductor Corp.*, Case No. 14-cv-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018); *see also Baker v. SeaWorld Ent., Inc.*, Case No.: 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *9 (S.D. Cal. July 24, 2020) ("[T]he lodestar cross-check need not be as exhaustive as a pure lodestar calculation because it only serves as a point of comparison by which to assess the reasonableness of a percentage award.") (cleaned up).

Courts in this Circuit have routinely authorized similar awards. *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1018–23 (E.D. Cal. 2019); *Davis v. Symetra Life Ins. Co.*, NO. 2:21-cv-00533-KKE, 2025 WL 1434727, at *4–6 (W.D. Wash. May 19, 2025); *Jenson v. First Tr. Corp.*, CV 05–3124 ABC (CTx), 2008 WL 11338161, at *1, 11–16 (C.D. Cal. June 9, 2008). The Court recognizes that the requested attorneys' fees are above the benchmark but finds they are within the limit originally contemplated and noticed to the potential class members. The requested attorneys' fees are also reasonable given the efforts expended, the results obtained for this type of high-risk case, and the compromise reached in the best interests of the class members. The Court therefore finds the requested amount of attorneys' fees reasonable and **GRANTS** the award of attorneys' fees in the amount of $3,300,000.

**B. Litigation Expenses**

Class Counsel seeks reimbursement of $102,280.30 in expenses, which is within the maximum preliminarily approved by the Court and noticed to the Class Members. (Doc. 88 at 24–25.) Class Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. This amount "should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("*In re Media Vision*")).

Class Counsel requests reimbursement of the following expenses:

| Firm | Expenses |
|---|---|
| Blood, Hurst, & O'Reardon LLP | $21,880.76 |
| Fitzgerald Monroe Flynn PC | $20,724.79 |
| Girard Sharp LLP | $39,134.55 |
| Levine Kellogg Lehman Schneider + Grossman LLP | $20,540.20 |
| **Totals:** | **$102,280.30** |

(Doc. 88-1 at 11; *see id.*, Exs. 5–8 at 25–32 (containing Class Counsel expense charts).) The Court finds that Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation and were advanced by Class Counsel for the benefit of the Class. Accordingly, the Court **GRANTS** the request for reimbursement of litigation costs and expenses in the full amount of $102,280.30.

### C. Administrative Costs

The Settlement Administrator estimated the administrative costs to total $300,219. (Doc. 74 at 32–33.) The Court previously authorized an advanced payment of $229,000 to the Settlement Administrator for purposes of notice and settlement administration costs incurred before Final Approval. (Doc. 85 at 6–7.) The costs included those associated with the implementation of the notice campaign, fielding any inquiries from Settlement Class Members, and website management. *See In re Packaged Seafood Prods. Antitrust Litig.*, Case No. 3:15-md-02670-DMS-MDD, 2022 WL 228823, at *7 (S.D. Cal. Jan. 26, 2022) (approving interim distribution of $1 million to claims administrator prior to final settlement approval "[g]iven its depth of reach, and the need to reach tens of millions of Settlement Class Members").

Plaintiffs now request that the Court approve, in addition to the $229,000 advance, an additional $71,219 payment to the Settlement Administrator which represents the balance of the $300,219 estimated administrative costs. (Doc. 89 at 7.) Plaintiffs also state

that, as of January 20, 2026, the advance remained unpaid. (*Id.* at 7 n.3.) The Settlement Administrator was responsible for effectuating notice of the Settlement and processing proposed Class Members' claims. (*See* Meichsner Decl. [Doc. 88-2] ¶ 2(a)–(i).) The Court concludes that Simpluris' costs were reasonably incurred for the benefit of the Settlement Class. Accordingly, the Court **GRANTS** Plaintiffs' request for administrative costs in the total amount of $300,219.

**D. Service Awards**

Plaintiffs also seek $10,000 for each of the three Lead Plaintiffs and Class Representatives. Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). When awarding a class representative service award, district courts generally evaluate "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action . . . ." *Rodriguez*, 563 F.3d at 958–59 (cleaned up).

In this action, the Class Representatives actively participated in, and made significant contributions to, this litigation for three years. (*See* Doc. 88-3, Declaration of Golam Sakline ["Sakline Decl."]; Doc. 88-4, Declaration of Joewy Gonzalez ["Gonzalez Decl."]; and Doc. 88-5, Declaration of Nicole Keane ["Keane Decl."].) Each Class Representative devoted significant time, effort, and resources to litigating on behalf of the Settlement Class and protecting the Settlement Class's interests. For these reasons, the Court finds the service awards to the Class Representatives are appropriate. Accordingly, the Court **GRANTS** the request for service awards and awards $10,000 to each Class

Representative for a total of $30,000.

## IV. **<u>CONCLUSION</u>**

For the reasons stated in this Order, as well as in the Court's Preliminary Approval Order (*see* Doc. 85), Plaintiffs' Final Approval Motion (Doc. 87) and Plaintiffs' Fees Motion (Doc. 88) are **<u>GRANTED</u>**. The Court further **<u>ORDERS</u>** as follows:

1. This Order incorporates by reference: (a) the Court's Preliminary Approval Order (Doc. 85); (b) the Settlement Agreement (Doc. 74-3), as well the definition of words and terms contained therein; and (c) the Notice Plan (Doc. 74-14, Declaration of Julie Meichsner in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ["Prelim. Meichsner Decl."] ¶¶ 5–32), Plan of Allocation (Doc. 74-7), and CAFA Notice (Doc. 87-2, Ex. A at 7–12).
2. Subject to the exceptions in section 1.23 of the Settlement Agreement (*see* Doc. 74-3 at 6), the Court **<u>CERTIFIES</u>** the following Settlement Class: all persons or entities who, between April 1, 2019, and November 11, 2022, sent or deposited fiat currency into an FTX- or Alameda-related account at Silvergate Bank and who, on November 11, 2022, still had an account on FTX.com or FTX.US that contained cryptocurrency, fiat currency, or both.
3. The Court finally **<u>APPROVES</u>** the Settlement Amount of $10,000,000 as a non-reversionary settlement payment to settle and resolve all claims in the action by or on behalf of the Settlement Class against Defendants.
4. The Court finds that the CAFA notice requirements, to the extent applicable to the instant action, have been satisfied.
5. The Court finally **<u>APPROVES</u>** Girard Sharp LLP, Blood Hurst & O'Reardon, LLP, Fitzgerald Monroe Flynn PC, and Levine Kellogg Lehman Schneider + Grossman LLP as adequate Class Counsel and **<u>AWARDS</u>** Class Counsel $3,300,000 in attorneys' fees and $102,280.30 in litigation expense.

6. The Court finally **APPROVES** Plaintiffs Sakline, Gonzalez, and Keane as adequate Class Representatives and **GRANTS** service awards of $10,000 for each Class Representative, for a total of $30,000.
7. The Court **APPROVES** the payment to the Settlement Administrator in the total amount of $300,219.
8. The Court therefore **DIRECTS** the Parties and the Settlement Administrator to effectuate the Settlement according to its terms and conditions.
9. Without affecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over the implementation, administration, and enforcement of this judgment and the Settlement.
10. This action and all released claims set forth in the Settlement Agreement are **DISMISSED WITH PREJUDICE**. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Settlement.
11. This Order constitutes a Final Judgment and separate document pursuant to Federal Rules of Civil Procedure 54 and 58(a).

**IT IS SO ORDERED**.

DATE: February 10, 2026

Ruth Bermudez Montenegro

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE